### IN THE

# SUPREME COURT OF MINNESOTA.

| 33 | 1 |
|----|-----|
| 42 | 4 |
| 43 | 451 |

| 33 | 1 |
|----|-----|
| 47 | 126 |

| 33 | 1 |
|----|-----|
| 51 | 368 |

NORTH STAR IRON WORKS COMPANY *vs.* MARTIN STRONG and others.

### December 18, 1884.

**Mechanic's Lien—Including Land in Excess of Statutory Quantity.**
Under the mechanic's lien law, (Gen. St. 1878, *c.* 90,) when the building on which the lien is claimed is situate upon a tract of land containing a greater area than that upon which a lien is given, it is not necessary that the claimant should in his affidavit and claim of lien carve out and describe the statutory amount. It is sufficient if he describe the building, and the entire tract upon which it stands. The court, if necessary, can determine and fix the shape in which the statutory amount subject to the lien shall be carved out of the entire tract. Remarks in *Tuttle* v. *Howe*, 14 Minn. 113, (145,) indicating a different view, are mere *obiter*.

**Same—Including Tract not subject to Lien.**—When the building is described so as to identify it, and the tract of land upon which it stands is described, the fact that the claimant embraces in his claim for a lien other lands not included in the tract and curtilage upon which the building is situated, (no fraud being suggested, and it not appearing that any person has been misled, or his rights prejudiced,) will not invalidate the lien, but it will be held good to the extent it is recognized by the statute.

**Same—Action to Enforce—Limitation.**—It is not necessary that an action to enforce a lien should be prosecuted to judgment within the period mentioned in section 6 or 7, during which the filing of the account alone

v.33m—1

continues the lien. If *commenced* within that period, it may be prosecuted to judgment and the judgment enforced, notwithstanding that the expiration of such period intervenes.

Appeal by defendant Charles L. Vance from a judgment of the district court for Big Stone county, where the action was tried before *Brown*, J., without a jury. The case is stated in the opinion.

*Chas. D. Kerr*, for appellant.

The including in the lien claim ten separate and distinct lots, aggregating more than one acre in area, was fatal to the lien. *Knox* v. *Starks*, 4 Minn. 7, (20;) *McCarty* v. *Van Etten*, 4 Minn. 358, (461;) *Mason* v. *Heyward*, 5 Minn. 55, (74;) *Rugg* v. *Hoover*, 28 Minn. 404; Gen. St. 1878, c. 90, §§ 1, 7; *Rose* v. *Persse & Brooks Paper Works*, 29 Conn. 256; Phillips, Mech. Liens, § 387.

As to the lien set up in the first cause of action, the two years during which it remained operative had expired when the judgment appealed from herein was rendered. The lien ceased to be operative for any purpose at the expiration of two years, and the judgment should be reversed. Gen. St. 1878, c. 90, § 7; Gen. St. 1866, c. 90, § 8; Overton on Liens, § 576; Phillips, Mech. Liens, § 266; *Poerschke* v. *Kedenburg*, 6 Abb. Pr. (N. S.) 172; *Mathews* v. *Daley*, 7 Abb. Pr. (N. S.) 379; *Barton* v. *Herman*, 8 Abb. Pr. (N. S.) 399; *O'Donnell* v. *Rosenburg*, 14 Abb. Pr. (N. S.) 59; *Huxford* v. *Bogardus*, 40 How. Pr. 94; *Paine* v. *Bonney*, 4 E. D. Smith, 734; *Stone* v. *Smith*, 3 Daly, 213; *Cornelius* v. *Uhler*, 2 Browne, (Pa.) 229; *People* v. *Lamb*, 3 Lansing, 134; *Lewis* v. *Morgan*, 11 S. & R. 234; *Hern* v. *Hopkins*, 13 S. & R. 269; *Freeman* v. *Cram*, 3 N. Y. 305; *Jones* v. *Alexander*, 10 Sm. & M. 627; *Grant* v. *Vandercook*, 2 Alb. L. J. 52; *People* v. *Lamb*, 3 Alb. L. J. 13; *Kinkel* v. *Peterson*, 5 Alb. L. J. 288.

*A. L. Levi* and *F. Hooker*, for respondent.

MITCHELL, J.[1] Action to foreclose two mechanics' liens upon a flouring-mill. The first was for machinery for the mill furnished to Strong Bros., the owners, between April 1 and May 1, 1882. The second was for labor performed and machinery furnished to the same parties for the repair of the mill, between March 15 and November 15,

---

[1] Gilfillan, C. J., because of illness, took no part in this decision.

1882. The verified accounts of such labor and machinery were both filed in the office of the register of deeds on the first day of March, 1883. In the affidavits to these accounts the building is described as a flouring-mill, and the premises upon which it is situated are thus described: "A certain lot of land owned by said Martin Strong, Henry W. Strong, and Dennis Strong, in said county of Big Stone and state of Minnesota, described as follows, to wit: Lots three, (3,) four, (4,) five, (5,) six, (6,) seven, (7,) eight, (8,) nine, (9,) ten, (10,) eleven, (11,) and twelve, (12,) all in block No. three, (3,) in the village of Graceville, according to the map and plat of said village on file and of record in the office of the register of deeds in and for said Big Stone county; and that the said North Star Iron Works Company claims a lien on the said building and land to secure the payment of said account." These premises are within the limits of the village plat of the village of Graceville, and contain an area of considerably more than one acre. These lots all belonged to Strong Bros., the owners of the mill, and all lie contiguous to each other, except that an alley runs through the centre of the block, leaving a part of the lots on either side. The mill building is in fact situated on lots 10 and 11. Whether the other lots were all used as appurtenant to the mill does not appear. On the 11th of January, 1883, Strong Bros. executed a mortgage upon these premises to defendant Vance. This action was commenced in April, 1883, tried, and a decision rendered on the 19th of April, 1884, ordering judgment in favor of the plaintiffs for the amount of their accounts, and that it be charged as a specific lien upon lots 10 and 11, and the mill thereon standing. Final judgment was entered accordingly on the 7th of August, 1884, from which Vance, the mortgagee, appeals, the contest being entirely between him and the plaintiffs.

1. The first contention of appellant is that the act of including all 10 lots in the affidavit and lien claim as filed, aggregating in area more than one acre, is fatal to the lien; that it is essential to the validity of the lien claim that the quantity of land therein described should be within the statutory limit, which in this case was one acre. This goes upon the theory that where the building upon which the lien is claimed is situated upon a tract of land containing more than

the statutory limit, the claimant in the description given in the affidavit filed should carve out the acre or 40 acres, as the case may be, upon which he claims a lien.   An examination of the statute leads us to a different conclusion.   Section 1 of the statute (Gen. St. 1878, c. 90,) provides that the party shall have a lien upon the building, and "on and to the land upon which the same is situated, not exceeding forty acres, and, if erected within the limits of any city, town, or village plat, the lot of ground on which said house, mill, manufactory, or other building and appurtenances is erected, not exceeding in extent one acre."   The form of affidavit given in section 18, which may be used in such cases, is (after describing the building as a house or mill, giving the common name of the building:) "And that said building is situate upon a certain lot of land owned by said C. D., in town ——, section ——, range ——, in said county ——, and this affiant claims a lien on the premises."   The term "lot," as used in this statute, is evidently to be understood as synonymous with "tract" or "parcel."

It seems to us that all that these provisions of statute contemplate is that the building and the tract of land upon which it is situated should be so described as to identify the building and its location. Hence, if the building is situate upon a tract containing more than the statutory limit, the most that can be necessary is that the affidavit identify by description this tract, leaving the exact shape or boundaries of the acre or 40 acres to be determined by the court in its decree or judgment.   By thus identifying the building, and the tract upon which it is situated, reasonable notice is given to third parties dealing with the property.   They know that the statute gives a lien on the building, and the land on which it is situated up to a specified area, the only element of uncertainty being the exact shape in which this may be carved out.

Any other construction of the statute would work badly in practice. If the claimant is bound in his claim to carve out the precise area, he might often be unable to do so.   It might be necessary to go upon the premises and make a survey.   If the owner or occupant objected, he would have no right to do this.   Again, if he is bound to carve out and describe the exact statutory area, he would have a right to take

it in any shape he pleased, and his selection would be absolutely binding upon the court in rendering its judgment. But cases can be imagined where he might carve it out in a shape that would be highly injurious to the remainder of the tract, and yet wholly unnecessary for the protection of his lien. Again, suppose there were a number of parties holding liens on the same building, could each select his land in any shape he pleases, so long as it includes the building? If so, it might be that no two selections would coincide. Such a practice would lead to interminable difficulties. There is nothing in the form given in section 18 that suggests that any such thing is required.

A consideration of the language of the statute itself and of practical results leads us to the conclusion that all that is necessary is that the building be described by its common name, and that the tract of land upon which it stands be described so as to identify its location; and, if the tract contains more than the statutory amount, the court can carve out and fix in its decree the land upon which a lien is to be adjudged, in such shape as to be most available for the beneficial use of the building, and at the same time work no unnecessary injury to the remainder of the tract. .

We are referred to certain decisions of this court which it is claimed hold a different doctrine. The cases of *Knox* v. *Starks*, 4 Minn. 7, (20,) and *McCarthy* v. *Van Etten*, Id. 358, (461,) in each of which the sufficiency of the complaint was considered, were both under the lien law of 1855, which, in very essential particulars, differed from the present statute. Hence, whether correctly decided or not, these cases are not controlling as authority in the present case.

In the case of *Tuttle* v. *Howe*, 14 Minn. 113, (145,) remarks are made in the opinion, by way of argument, that corroborate appellants' views. But on examination it will be found that this is really *obiter*, that point not being involved. In that case the claimant had carved an acre out of a larger tract, and described that acre and no more, in his claim for a lien. All that was decided or necessary to be decided was that this did not invalidate his lien upon the building and the acre thus described. As no two statutes are exactly alike, decisions in other states are not entirely in point as authority. But our views as to the construction of this statute and the proper practice under

it are in harmony with the construction put upon other statutes more
or less analogous.　See *Edwards* v. *Derrickson*, 28 N. J. Law, 39;
*Oster* v. *Rabeneau*, 46 Mo. 595; *Tibbetts* v. *Moore*, 23 Cal. 208;
*Hill* v. *La Crosse & M. R. Co.*, 11 Wis. 214; *McCoy* v. *Quick*, 30
Wis. 521.

If all these lots constituted but one tract, it follows that the descrip-
tion in the affidavit is good.　If, however, some of these lots consti-
tuted separate tracts, and were not included in the tract and curti-
lage upon which the mill is erected, the result would be the same in
this case.　The tract upon which the mill is situated is sufficiently
described.　The building is properly described so as to identify it.
There is no suggestion that there is any other mill on any of these
lots.　It does not appear that any one has been misled, or that the
rights of any other person have been prejudiced.　No fraud is claimed.
Under such circumstances it is well settled that if a party embraces
in his claim filed more property than he ought to, and more than is
embraced in the tract upon which the building is situated, this fact
will not invalidate the lien, but it will be good to the extent it is rec-
ognized by the statute.　*Edwards* v. *Derrickson, supra; Shattuck* v.
*Beardsley*, 46 Conn. 386; *Whitenack* v. *Noe*, 11 N. J. Eq. 321; *Oster*
v. *Rabeneau, supra.*

2. The further contention of appellant as to the first cause of action
is that, two years having elapsed after the machinery was furnished
and before judgment, the lien had ceased, and therefore no judgment
could be rendered for its enforcement.　His position is that, although
the action be brought within the two years, its pendency does not
prolong the lien beyond that period, the statute containing no provis-
ion to that effect; that it is necessary, not only to commence the
action, but also to prosecute it to judgment within the two years.

The determination of this point requires a reference to some of the
provisions of the statute.　Sections 1 and 2 provide that whoever
performs labor or furnishes materials, etc., "shall have a lien," etc.
This is the part of the law which gives the lien and defines its extent.
The following sections provide for its continuance and enforcement.
Section 6 provides for the filing of an account by any subcontractor
entitled to a lien under section 2, "which account so made and filed

\* \* \* shall, for one year from the commencement of such labor or the furnishing of such materials, operate as a lien upon the several descriptions of structures," etc. Section 7 provides for the filing of such an account by contractors entitled to a lien under section 1, and that "such account, so verified and filed, shall, during all the period of time from the commencement of such labor, \* \* \* or the furnishing of such materials or machinery, until the expiration of two years after the completion of such \* \* \* labor, or the furnishing of such materials or machinery, operate as a lien upon the several descriptions of structures," etc. Section 8 reads, "Any person holding a lien under the provisions of the preceding sections *may proceed to obtain judgment and enforce the same* in the same manner as in actions for the foreclosure of mortgages upon real estate."

In construing this statute the following facts should be kept in mind:

*First.* That it is remedial in its nature, and while, inasmuch as some of its provisions are harsh and severe against subsequent purchasers and incumbrancers, it would be improper to extend its provisions by anything bordering on judicial legislation, yet it ought to receive such construction, if it is fairly and reasonably susceptible of it, as will carry out the object of the legislature.

*Second.* The object of the legislature evidently was the security of mechanics and material-men, by giving them a lien upon the property they have contributed to improve or create. If the action to enforce the lien must not only be commenced, but also prosecuted to judgment, within the periods named in sections 6 and 7, respectively, the right given would, in many cases, be of no value. In view of the inevitable delay in litigation resulting from continuances, appeals, and new trials, there would be many instances, even in the case of original contractors having a lien under section 1, when it would be impossible to obtain judgment within the two years. And in the case of subcontractors entitled to a lien under section 2, whose account when filed operates as a lien only for *one year* from the *commencement* of the labor, the right would be usually absolutely unavailable. Further, if appellant's position is correct, it logically follows that the lien must be wholly enforced within the period by sale of the prop-

erty to satisfy the judgment.    Such a result can hardly be supposed
to have been intended, and should not be reached if by any fair and
reasonable construction of the statute it can be avoided.

*Third.* Another fact is worthy of consideration.    The almost uni-
versal policy and scheme of such lien laws is that the action shall be
brought within a limited time, and that thereafter the lien is contin-
ued by the *lis pendens*, for in no other way is the remedy adequate.
If the legislature intended in this case to depart from so common and
natural a policy, it is to be presumed that this intention would be very
clearly expressed.

The conclusion we arrive at from all these considerations and an
examination of the entire statute is that by sections 1 and 2 the legis-
lature gave the lien and defined its extent.    By sections 6 and 7 they
fixed the length of time during which the lien might be continued with-
out action by filing an account.    By section 8 they intended to provide
that any one who should commence an action within that time, and
hence, in the language of the act, "held a lien," might *"proceed to
obtain judgment and enforce the same."*    In other words, if he com-
menced·his action while his lien was still continued under the pro-
visions of section 6 or 7, he may proceed to judgment and enforce the
same; that is, make the procedure effectual for the purpose for which
it was provided.

Appellant relied much upon a line of New York decisions as sus-
taining his views.    The statutes under which these were rendered
were so essentially different from ours that the cases cited are hardly
in point.    For example, the lien law of New York city (Laws 1863,
c. 500) provided for filing a notice of the claim with the county clerk,
who was required to make an entry of it in the "lien docket."    The
act, like all the New York statutes, provided a special and very sum-
mary procedure for the enforcement of the lien.    Section 11 provided
*"that liens shall in all cases cease after one year, unless by order of court
the lien is continued and a new docket made."*    The act of 1854 (chap-
ter 402) provided for filing notice of the claim with the town clerk
within 30 days after completion of the work, and that the party, *on
filing such notice, should have a lien, etc.*    Section 20 provided that
*"every lien created under the provisions of this act shall continue until*

*the expiration of one year.*" The act of 1844 (chapter 220) provided for filing the contract in the office of the city clerk and serving notice upon the owner, and that (§ 3,) "the lien so created by this act shall take effect from such filing and such service of said notice, and shall continue in full force for the space of one year thereafter." The action provided for in that act was in no sense an action to enforce or foreclose the lien, but simply an action in *assumpsit* for the recovery of a money judgment. The court did not consider or pass upon the lien, and the judgment made no reference to it. The "mechanic's" lien and the judgment lien were separate and distinct, and it was on these grounds that the court in the case of *Freeman* v. *Cram,* 3 N. Y. 305, placed its decision that the lien was not prolonged by obtaining judgment against the owner of the property within the year.

There is another consideration which we think is entitled to some weight in the case: Our statute, in its present form, has been in force since early in 1878—nearly seven years. As far as our knowledge goes, our impression is that the construction which we have placed upon it is the one upon which the bar of the state have generally acted.

The facts of this case forcibly illustrate the injustice done to subsequent purchasers and mortgagees by giving a party a whole year after the completion of his contract in which to file his lien. But the remedy for this is with the legislature.

Judgment affirmed.