ASMUND AABY v. BETTER BUILDERS, INC. AND OTHERS.
NORTHWESTERN FEDERAL SAVINGS & LOAN ASSOCIA-
TION OF MINNEAPOLIS, APPELLANT.[1]

April 1, 1949.

No. 34,863.

[1]Reported in 37 N: W. (2d) 234.

*Edward Cohen,* for appellant.
*T. H. Wangensteen,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action to foreclose a mechanic's lien for $3,498.63 filed against nine lots situated in block 5, Plymouth Addition, Anoka county, owned by defendant Better Builders, Inc., for lumber of that value alleged to have been delivered to said premises for the improvement thereof between December 16, 1946, and January 7, 1947.

Defendant Northwestern Federal Savings & Loan Association of Minneapolis, hereafter referred to as Northwestern, is mortgagee in several mortgages on said lots. The trial court made findings, conclusions, and order for judgment determining plaintiff's lien against the above premises to be in the sum of $2,136.93, plus interest, attorneys' fees, and costs, and adjudging it superior to the mortgage liens of Northwestern. From an order denying its motion for amended findings or a new trial, Northwestern appeals. No appeal was taken by the remaining defendants.

On appeal, Northwestern asserts that the trial court erred in failing to adjudge plaintiff's lien null and void under M. S. A. 514.74, which provides:

"* * * In no case shall a lien exist for a greater amount than the sum claimed in the lien statement, nor for any amount, if it be made to appear that the claimant has knowingly demanded in the statement more than is justly due."

The facts are as follows: Plaintiff, engaged in the lumbering business near Chisholm during 1946-1947, employed Lester Tappe to find buyers for his lumber and to make deliveries thereof. In November 1946, Tappe discussed with D. W. Schoenfeldt, manager of Better Builders, Inc., a Minneapolis contracting firm, the prospect

of supplying it with lumber for about 50 houses it was constructing in the vicinity of Minneapolis, including a number in Plymouth Addition, Anoka.

Thereafter, pursuant to an oral agreement between Tappe, on behalf of plaintiff, and Schoenfeldt, on behalf of Better Builders, Inc., plaintiff began delivery of lumber to Better Builders, Inc., at Plymouth Addition for the construction of the houses it was building there.

The deliveries in issue in this litigation were made on December 16, 1946, December 21, 1946, and January 6, 1947. They aggregated 22,494 feet of lumber of the value and agreed price of $4,447.72. The trial court determined that lumber of the value of $2,136.93 went to the Plymouth Addition and the remainder to other properties under construction by Better Builders, Inc. No payment for any of such lumber was ever made to plaintiff. A check for $1,836.50, for the December 16, 1946, lumber, delivered by Better Builders, Inc., to Tappe and endorsed by him to plaintiff, was returned for lack of funds.

Northwestern asserts that plaintiff's action in filing a lien for $3,498.63, when actually only $2,136.93 of lumber had been delivered to the properties upon which the lien was filed, constituted a violation of the above statute and rendered the lien null and void.

In explanation of the excessive amount of the lien filed, plaintiff offered the following evidence: At the time the lien was filed, shortly prior to the expiration of the 90 days permitted therefor under the lien statutes, neither Tappe nor plaintiff's attorney had in their possession all of the delivery slips on which notations of the amounts delivered to the various properties had been made. Tappe, as plaintiff's agent, together with plaintiff's attorney, visited the various properties in an effort to ascertain the exact disposition of the lumber. Carpenters at work on one of the properties not in Plymouth Addition informed them that some of the lumber previously delivered there had been hauled back to Plymouth Addition, while other lumber had been hauled to other properties. The evidence indicates that upon orders of Better Builders, Inc., the lumber was

hauled back and forth between its various construction projects. No evidence was available to plaintiff or his agents to indicate how much thereof was used at Plymouth Addition.

At that time the three deliveries in question totaled $4,447.72. Plaintiff's counsel was of the opinion that at least $3,498.63 thereof had been delivered to the Plymouth Addition either directly or from the other properties. He arrived at this amount by deducting from the full amount due the amounts delivered to other properties from which he knew no lumber had been returned to Plymouth Addition and filed a lien for the balance. This was his best estimate of the lumber actually used in the Plymouth Addition, and the lien was filed for that amount in good faith. No evidence was presented to indicate that Northwestern had been damaged because of the excessive amount in the lien filed.

■ This court has always given a liberal construction to the mechanics' lien law in favor of workmen and materialmen for the labor and material actually supplied in the improvement of real property. Thus, in North Star Iron Works Co. v. Strong, 33 Minn. 1, 7, 21 N. W. 740, 743, it was stated:

"* * * it is remedial in its nature, and while, inasmuch as some of its provisions are harsh and severe against subsequent purchasers and incumbrancers, it would be improper to extend its provisions by anything bordering on judicial legislation, yet it ought to receive such construction, if it is fairly and reasonably susceptible of it, as will carry out the object of the legislature."

See, also, Emery v. Hertig, 60 Minn. 54, 57, 61 N. W. 830, 831.

■ Thus, it has been held that the inclusion in a lien statement of more property than the statutory limit did not, in the absence of bad faith, destroy the lien, North Star Iron Works v. Strong, 33 Minn. 1, 21 N. W. 740, *supra;* Smith v. Headley, 33 Minn. 384, 23 N. W. 550; that the inclusion of nonlienable items, in the absence of a fraudulent purpose, did not destroy the entire lien where it was possible to segregate the various items and determine the true amount of the lien, Dennis v. Smith, 38 Minn. 494, 38 N. W. 695;

that a lien for an excessive amount representing materials that went into another building did not defeat the lien where an honest mistake of the lienor in keeping its books had resulted in the excessive lien filed, Hydraulic Press Brick Co. v. Mortgage Land Inv. Co. 144 Minn. 24, 173 N. W. 849.

■ Here, the excessive amount of plaintiff's lien was the result of plaintiff's inability to ascertain accurately the amount of lumber which went into the property charged, a difficulty caused in part at least by the practice of Better Builders, Inc., of hauling the lumber back and forth amongst its various properties. The mistake was induced by the inaccuracy of the estimate of plaintiff's counsel rather than by a mistake in the keeping of plaintiff's records. It would seem to require too narrow and restricted a construction of the lien statutes to hold that such a mistake nullified plaintiff's right to claim the agreed price of the material which he had produced and delivered for the improvement of this property, particularly where no damage therefrom resulted to the appellant mortgagee.

Northwestern relies upon Lyons v. Westerdahl, 128 Minn. 288, 150 N. W. 1083; Home Supply Co. Inc. v. Ostrom, 164 Minn. 99, 204 N. W. 647; and Standard Lbr. Co. v. Alsaker, 207 Minn. 52, 289 N. W. 827. They are distinguishable. In the Lyons case, the lienor performed part of the work and then ceased performance completely. Subsequently, he filed a lien based upon the *full contract price* he would have received had he completed the work. In the Ostrom case, the lienor first signed a lien waiver, but subsequently filed a lien for the amount waived in addition to other improvements made. In the Alsaker case, the lienor diverted funds paid to him in satisfaction of his debt for material to a contractor who had constructed a barn for defendants to obtain additional money from the property for the contractor's benefit.

In the cases cited, the court found that the lienors had *intentionally* demanded more in their lien statements than was justly due them, with a motive amounting almost to bad faith. Here, plaintiff has been guilty of no bad faith nor fraudulent intent. The excessive amount of his lien is due to inaccuracy in estimating the amount

of lumber used. He has not *knowingly,* as used in § 514.74, demanded more than was justly due him.

The court found that plaintiff had a valid lien on the property in Plymouth Addition. This finding eliminated the need of a specific finding to the effect that plaintiff had not *knowingly* filed a lien for an excessive amount under the statute. The court's finding to the effect that plaintiff had a *valid* claim would, by inference, determine that no violation of the statute was involved. Further, the court's denial of defendant's motion for an additional finding to such effect was equivalent to a finding in favor of plaintiff on this issue. Lafayette Club v. Roberts, 196 Minn. 605, 265 N. W. 802; Johnson v. Johnson, 223 Minn. 420, 27 N. W. (2d) 289.

Affirmed.

