DAVID M. DELYEA, d. b. a. WYKOFF LUMBER COMPANY,
v. EARL G. TURNER AND ANOTHER.

118 N. W. (2d) 436.

November 16, 1962—No. 38,216.

*George O. Murray,* for appellant.
*Clinton J. Hall,* for respondents.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying the plaintiff's motion for amended findings of fact or in the alternative for a new trial. The plaintiff sought to recover the reasonable value

of labor, material, and supplies furnished to the defendants and to have a lien established for the amount involved against the real property of the defendants. By its order the trial court held that the plaintiff was entitled to $1,581.08 from the defendants rather than $5,715.13, the amount claimed. It further held that the plaintiff's right to a lien was defeated by his act of filing a lien claim in an amount grossly in excess of what was actually due him.

Viewing the record in the light most favorable to the prevailing party in the court below, it establishes that in the fall of 1958 the plaintiff, David M. Delyea, doing business as Wykoff Lumber Company, discussed with the defendant Earl G. Turner, a dairy farmer, the construction of certain buildings and improvements for the defendant's farm. There were several conferences between the parties. It appears that Mr. Turner, hereinafter called the defendant, proposed to construct upon his premises certain facilities for use in his dairy business which would qualify his milk for a higher grade and consequently a better price. He had acquired an old schoolhouse which he proposed to move to his premises and remodel into a "parlor milker." The proposed improvements consisted of a pole barn, which was to be a structure enclosed on three sides, the sides and roof being constructed in part of corrugated steel; the remodeling of the schoolhouse; and the construction of a "holding area," which was to be an open space located next to the milking parlor with 600 square feet of concrete floor enclosed by posts.

Subsequent to their original meeting the plaintiff took the defendant to at least two farms in the neighborhood where modern milking facilities had been constructed and installed. The plaintiff also went to the defendant's farm and looked over the area and the old schoolhouse the defendant had purchased. He then provided the defendant with a statement setting forth the dimensions of the various buildings to be constructed and a sketchy reference to the installation of footings, stalls, partitions, water system, and other features. The statement did not contain complete details and specifications. The copy of the statement given to the defendant contains the figure $4,000. The plaintiff testified that he told the defendant the job would cost approximately

$4,000. He handed the defendant the piece of paper with these notations. The paper was not signed. There was no formal written contract. The defendant testified that at the time the paper was given to him there was an oral agreement that the work referred to both in the paper and in the conversation between them would be performed for the sum of $4,000.

Work was commenced about November 15, 1958. While the work was in progress, on February 24, 1959, the defendant paid the plaintiff the sum of $3,000. When the work was completed the plaintiff determined that the reasonable value of materials and labor which went into the job was $8,715.13 and demanded payment of the difference. The defendant refused payment, asserting that the plaintiff was entitled to no more than the agreed amount of $4,000. The plaintiff thereupon filed a lien for the sum of $5,715.13, which allowed for credit of the $3,000 previously paid. The plaintiff sought by this action to secure a judgment for the balance claimed and to enforce a lien therefor.

The case was tried before the court without a jury. The court found that there was a contract entered into by which the plaintiff agreed to perform the work and provide the material for the job for the sum of $4,000. It determined that there was a balance of $1,000 due on the contract. Pursuant to a stipulation entered into between the parties with reference to extra work performed and materials supplied by the plaintiff not covered by the original agreement, and making allowance for work which was originally included in the contract but not performed, the court determined that there was an additional amount due the plaintiff of $581.08, making a total of $1,581.08.[1]

---

[1] As to the extra work, the court found: "In addition to the labor and material required to be furnished by the Plaintiff under said building and remodeling agreement, the Plaintiff installed a 'walk-in' door of the reasonable value of $23.44; increased the area of the holding area of the reasonable value of $92.38; installed twelve five foot poles instead of eight foot poles of the reasonable value of $15.75; installed a six inch curb of the reasonable value of $33.06; placed four inch cement block on three walls of the interior in the milk parlor of the reasonable value of $185.98; placed stone board on the walls and ceiling of the room adjacent to the milking parlor of the

1. In considering the issues presented we must keep in mind the cardinal rule that findings of a trial court are entitled to the same weight as those of a jury and will not be reversed unless manifestly and palpably contrary to the evidence. Gifford v. Vore, 245 Minn. 432, 72 N. W. (2d) 625; In re Estate of Dahl, 249 Minn. 156, 81 N. W. (2d) 701; Hynan v. First Trust Co. 258 Minn. 118, 103 N. W. (2d) 209; Alsdorf v. Svoboda, 239 Minn. 1, 57 N. W. (2d) 824. The trial court, who heard the evidence, saw the witnesses, and took the trouble to visit the site of the improvement with counsel for both sides, as he had a right to, resolved conflicts in the testimony of the parties in favor of the defendants.

2. The plaintiff argues that the record does not support the court's finding that a contract in the sum of $4,000 was ever entered into between the parties and that the court should have granted recovery on the basis of the reasonable value of services performed and material furnished. The trial court carefully considered the evidence bearing upon the acts and statements of the parties relating to the agreement. While it is true no written contract was entered into which specifically set forth plans and specifications, it nevertheless satisfactorily appears from the testimony of both parties that most, if not all, of the details with reference to the work to be done and material to be furnished was orally agreed upon in substantially definite terms. In his testimony plaintiff related at some length the specifications of the various kinds of material which were to be used in the work. During the course of his examination, the court inquired:

"The Court: Are you telling how you are building?

"The Witness: How it was supposed to be built, and how it was built, yes.

"The Court: Well, which did you build it, the way it was supposed to be built?

"The Witness: Yes, right."

Later in plaintiff's testimony, after he had described the work and material involved in the project, the court inquired:

---

reasonable value of $345.47; making a total addition for labor and material in the sum of $696.08."

"The Court: Did he ask you for a bid, did he ask you to bid on it?

"The Witness: No, I approached him, he didn't approach me, I approached him and asked him if I could have the opportunity of giving an estimate on his pole building.

"The Court: What I am trying to find out is, from your talk, you gather that he understood you were going to do it for $4,000.00?

"The Witness: I would say that he understood that I was going to do it, what he had figured we'd do.

"The Court: For $4,000.00?

"The Witness: For $4,000.00, yes.

"The Court: And you expected to do what you had figured to do, you had expected to do that for $4,000.00?

"The Witness: Our way, yes.

"The Court: All right."

There is no contention here that this is a contract required by law to be in writing. The contract consists of the memorandum submitted by plaintiff to defendant and the oral undertakings expressed in conversations at or about the time the memorandum was delivered. We think there is sufficient evidence in the record from which the court could, from the memorandum and oral statements of the parties, spell out a valid contract. Whether a contract was made is primarily a question of fact to be determined by the trial court in the light of the evidence presented and the surrounding circumstances. Seitz v. Sitze, 215 Minn. 452, 10 N. W. (2d) 426; Alsdorf v. Svoboda, 239 Minn. 1, 57 N. W. (2d) 824. In McArdle v. Williams, 193 Minn. 433, 438, 258 N. W. 818, 820, we said:

" 'Words are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise, and where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of a promise whether it is expressed (1) in writing, (2) orally, (3) in acts, or (4) partly in one of these ways and partly in others.' Restatement, Contracts, American Law Institute, § 21."

We pointed out in Tysk v. Griggs, 253 Minn. 86, 93, 91 N. W. (2d) 127, 133:

"The trial court may properly, in the construction of a contract, put itself in the place of the contracting parties and then, in view of all the facts and circumstances surrounding them at the time the instrument was executed, consider what they intended by the terms of their agreement."

It appears from these authorities that the intention of the parties to a contract may be manifested by words, conduct, or a combination of both words and conduct, all interpreted in the context of the surrounding circumstances. We are, accordingly, of the view that under the facts in this case there was sufficient evidence from which the court could find that there was a meeting of the minds with reference to the amount of work to be performed and material furnished for an agreed price of $4,000. The record further establishes that the plaintiff stipulated as to the reasonable value of extra work and material furnished which was not included in the original agreement. The finding of the trial court with reference to extra work is supported by the stipulated facts and other evidence contained in the record.

3. The plaintiff further asserts that the court erred in denying the statutory lien. Minn. St. 514.03, so far as applicable here, provides:

"If the contribution be made under a contract with the owner and for an agreed price, the lien as against him shall be for the sum so agreed upon; otherwise, and in all cases as against others than the owner, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished."

It is clear from the foregoing statute that if there is a contract to do work at an agreed price the amount of the lien shall be for the unpaid portion of the contract only. In all other cases the lien shall not exceed the reasonable value of services performed and materials furnished. As we have heretofore noted, the court found that the sum actually due the plaintiff was $1,581.08. The amount claimed in the lien statement was grossly in excess thereof.

Section 514.74 is determinative of the issue as to whether the court erred in denying plaintiff's lien. It reads as follows:

"In no case shall the liens given by this chapter be affected by any inaccuracy in the particulars of the lien statement; but, as against all persons except the owner of the property, the lien claimant shall be concluded by the dates therein given, showing the first and last items of his account. In no case shall a lien exist for a greater amount than the sum claimed in the lien statement, *nor for any amount, if it be made to appear that the claimant has knowingly demanded in the statement more than is justly due.*" (Italics supplied.)

In Aaby v. Better Builders, Inc. 228 Minn. 222, 37 N. W. (2d) 234, and Ternes v. Westberg, 246 Minn. 485, 75 N. W. (2d) 415, we noted that the lien provided for by the above statute will not be defeated by an honest mistake on the part of the lienor or mere failure to prove some items in the lien statement. To deprive the claimant of his right to a lien under this statute there must be a showing of fraud, bad faith, or an intentional demand for an amount in excess of that due. The trial court indicated in its memorandum that the plaintiff started to work on the job late in the season and ran into cold weather so that the labor was considerably more than he had probably anticipated. The court further observed:

"* * * At any rate, the claim of the Plaintiff in his complaint and in his lien statement are so excessive that I have concluded that the Plaintiff, in making his complaint and his lien statement, claimed more than he knew or should have known as justly due."

The facts in this case distinguish it from Hydraulic Press Brick Co. v. Mortgage Land Investment Co. 144 Minn. 24, 173 N. W. 849, 176 N. W. 202, relied upon by plaintiff. While in that case the claim made was excessive, the difference in the amount claimed and the amount actually due was not so great as to indicate bad faith or intentional overstatement of the amount of the claim. Here the great disparity between the amount actually found to be due and the amount stated in the lien statement supports the trial court's conclusion that the plaintiff intentionally claimed an amount greater than that which was

justly due him. The amount claimed is so excessive as to preclude the likelihood of a mistake made in good faith.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

The evidence upon which the court found that plaintiff had agreed to complete the entire project in accordance with defendant's requirements for $4,000 included an unsigned statement dated November 6, 1958, furnished to defendant by plaintiff as follows:

"Wykoff, Minnesota 11-6, 1958

"Earl Turner

\* \* \* \* \*

"WYKOFF LUMBER COMPANY

\* \* \* \* \*

| "45' x 75' | Pole Bldg. | $4000.00 |
| 20 x 30 | Holding Area | |
| 2 8 x 26 | Parlor | |
| | Footing & Setting of Stalls | |
| | Partition Wall | |
| | Remove Tower | |
| | Sewer System | |
| | Water System | |
| | Fix over Stalls for overhead Feeding | |
| | Provide 10% floor area for Sidewall Lights." | |

Testimony with respect to this statement including the following:
By plaintiff:

"\* \* \* my manager and I \* \* \* figured out a *rough estimate* about what it would run to build the pole building and holding area, and put some cement footing in for this old schoolhouse, and the cement block, help to put the building onto it, and \* \* \* there was also one partition through the center, through the twenty-eight foot, wood frame partition with stone board figured on both sides, \* \* \*.

\* \* \* \* \*

"\* \* \* I went back \* \* \* in the afternoon and talked to Mr. Turner and gave him the estimate of what I thought we could do this work for.

\* \* \* \* \*

"* * * I gave him an approximation on the building and the holding area, and this parlor for concrete work, and this partition, *around $4,000.00*.

      \*     \*     \*     \*     \*

"* * * It was an estimate, a rough estimate of what, if it was done, in the way we had planned it.

      \*     \*     \*     \*     \*

"* * * there was no specifications or blueprints.

      \*     \*     \*     \*     \*

"* * * no plans * * * or elevations and things like that * * *." (Italics supplied.)

"Q. Now, Mr. Delyea, you had conversations with Mr. Turner at the inception of this deal, at which time you estimated that this work would cost $4,000.00 * * *?

"A. Right.

"Q. Now, that was in the nature of an approximation, or an estimate?

"A. Correct."

In response to questioning by the court, plaintiff testified that the work described in the written statement was to be furnished by him for $4,000 if it was done "our way."

Upon cross-examination he was asked:

"Q. * * * were you ever asked to sign any estimate by the Turners? '

      \*     \*     \*     \*     \*

"The Witness: Mr. Turner asked me if I would sign the estimate, yes.

      \*     \*     \*     \*     \*

"Q. And what did you tell him?

"A. I told him no, that I normally do not sign any estimate when we go into a remodeling job, as this is. It can vary quite a bit, and quite frequently does."

178

· This testimony was not denied by defendant. With respect to the written statement, the latter testified as follows:

"A.   He [plaintiff] was to do this work, the barn, the parlor, and the holding area. If there was anything I saw that I wanted changed, I said I would pay extra for it. Then in the parlor, he *agreed* to do everything according to Grade-A specifications.

\*     \*     \*     \*     \*

"Q.   And had you advised him that you wanted Grade-A specifications?

"A.   He *told me that would be complete.* I said there may be a lot of little incidentals. He said that is complete, that is his words." (Italics supplied.)

There is no testimony whatever to establish just what "Grade-A" specifications were; or that plaintiff had made any statements either orally or in writing with respect thereto. No exhibits or other documentary evidence were submitted to enlighten the court thereon, and plaintiff testified that such specifications had never been discussed with defendant at any time before the work was done.

With reference to a substitution of soil pipe for clay tile, required by defendant, the latter testified as follows:

"Q.   Do you know how that came about that they used it [soil pipe]?

"A.   I believe a Surge dealer came in there and he had a Grade-A book with him, \* \* \* and he said that they [clay tile] weren't acceptable \* \* \*. And so we didn't use them."

Other testimony by defendant with respect to the terms of the agreement takes the form of several conclusions recited in response to leading questions by his counsel, a few of which are quoted here as illustrative of this:

"Q.   Mr. Turner, you understood that Mr. Delyea was to do what is on that slip for $4,000.00?

"A.   That is right.

"Q. And was it your understanding that it was to comply with Grade-A requirements?

"A. That's right.

\* \* \* \* \*

"Q. Mr. Turner, what was the discussion on November 6th regarding the requirements of this agreement?

"A. It had to be set up according to Grade-A regulations."

On cross-examination, he further testified:

"Q. \* \* \* Is there anything in either of these exhibits [the statement of November 6, 1958] \* \* \* with reference to ventilation?

"A. In stating to complete a building and to have the Grade-A requirements; you have to have ventilation and painting.

"Q. I know. I asked you if there was anything in either one of these Exhibits with reference to ventilators, to a ventilation system?

"A. No.

\* \* \* \* \*

"The Court: \* \* \* where do you get these Grade-A requirements?

"The Witness: They have a book of rules, I believe, that sets out Grade-A requirements. Any Grade-A inspector has them, and I think the creameries have them, \* \* \*.

\* \* \* \* \*

"Q. Now, you have testified, Mr. Turner, in reference to a water line, running the water pipe in this some hundred feet, was that it, did you request that?

"A. You mean what pipe?

"Q. Into the pole barn?

"A. That was to be in the deal. There was supposed to have been a calf pen in the corner of this pole barn, and the agreement was to pipe water from my present water system, so I could have water in the calf pen as well as in the milking parlor.

\* \* \* \* \*

"Q. Isn't it a fact, Mr. Turner, that you were there watching that

job as it progressed every day, and * * * you were making suggestions practically daily as to what should be done?

"A.   No, I wouldn't say that.

*     *     *     *     *

"A.   I told the fellows it had to be done according to Grade-A, and I suppose I made that statement *four dozen times.*" (Italics supplied.)

The work commenced November 15, 1958. It is undisputed that during its progress numerous changes and requirements therein were made by defendant, none of which had any reference to the written statement described. Plaintiff submitted in evidence, without objection, sales slips, records, and other documents establishing that before the project was completed labor and material of the fair and reasonable market value of $8,715.13 had been furnished and supplied by him thereunder. This included numerous items for labor and material for changes which defendant had ordered while the work was under way. Plaintiff submitted testimony that after defendant's payment in February monthly statements of the account were mailed to defendant showing items of labor or material furnished on the project during each month.

Mr. Charles R. Halweg, manager of a lumber company at Preston, testified on behalf of defendant. His company had unsuccessfully bid for defendant's work. As a foundation for his testimony relative to the value of plaintiff's work, he testified that he did not profess to be an expert on lumber and had no more than a general knowledge of cement and construction work. Asked if he was familiar with the buildings constructed by plaintiff on defendant's farm, he replied that he had "looked at them once." Based upon such foundation, the court permitted him to estimate the value of the project as somewhere between $5,000 and $5,500.

Following the trial and before the court's decision therein, on February 20, 1960, the parties entered into a written stipulation as follows:

"That the reasonable value of labor, material and supplies of each Item in the list of modifications, additions and alterations submitted to the Court, are as follows:

"[An itemized list indicating the stipulated value of such amounts in the sum of $1,175.91.]

"This STIPULATION is not to be construed as an admission by plaintiff that an oral contract existed between the parties, nor an admission by defendants that said items were not within the contemplation of the parties at the time of making the original agreement."

In its finding with respect to the latter, the court allowed a total of only $696.08 of the aforesaid items designated as extra material due in excess of the $4,000 set forth in the statement of November 6, 1958, and as indicated above disallowed plaintiff's claim of lien for the balance due him. In a memorandum attached to the findings the trial court stated:

"The complaint of the Plaintiff proceeded on the theory of quantum meruit. * * * The Plaintiff finally admitted, upon I believe the cross-examination, that there was an agreement whereby the Defendants were to pay the Plaintiff the sum of $4,000.00 for doing certain things with respect to building a new pole barn and remodeling an old school house into a milk parlor. * * * At any rate, the claim of the Plaintiff in his complaint and in his lien statement are so excessive that I have concluded that the Plaintiff, in making his complaint and his lien statement, claimed more than he knew or should have known was justly due."

1. In my opinion, it is clear that the written statement submitted by plaintiff to defendant on November 6, 1958, was limited to plaintiff's performance of the work described therein for the sum of $4,000. It is very definite in this respect and certainly the parties here would be bound to the extent of such definite provisions. McCreight v. Davey Tree Expert Co. 191 Minn. 489, 254 N. W. 623; Merchants Nat. Bank v. Bryngelson, 160 Minn. 205, 199 N. W. 905; Shinners v. Ford, 151 Minn. 328, 186 N. W. 704. While parol evidence was admissible to show further agreements between the parties on matters not included in the written statement, 7 Dunnell, Dig. (3 ed.) § 3392, such evidence was not admissible for the purpose of varying its plain terms as it related to various items which plaintiff was to furnish and provide

thereunder for the sum of $4,000. Id. §§ 3368, 3407. Defendant's testimony, however, in effect did vary many of the clear provisions of this statement and enlarged it to require of plaintiff that he remodel the old schoolhouse to a completed "milking parlor" upon defendant's premises in compliance with so-called "Grade-A" specifications which were not clearly identified or submitted in evidence. Defendant's testimony reveals his position that, notwithstanding the definite terms and limitations of the written statement, plaintiff was nevertheless obligated to furnish and provide many items not mentioned therein simply because defendant "understood" that such items were to be provided by plaintiff. As the work progressed, he gave orders for numerous changes and modifications concerning which plaintiff was not consulted. In plaintiff's absence, about "four dozen times" he directed plaintiff's employees that the work must be performed in accordance with his idea of Grade-A specifications which at no time had been submitted to plaintiff. On these occasions he did not request estimates from plaintiff as to the extra costs of such changes, and at no time did he obtain plaintiff's consent thereto. The latter's course of conduct in refusing to sign the November 6, 1958, statement; in keeping accurate books and records covering the extra material ordered; and in forwarding monthly statements of accounts to defendant is indicative of his firm conviction that the modifications and extras ordered by defendant were to be at the latter's expense, and of the fact that defendant was well aware that separate charges therefor were being made by plaintiff.

2. Further, it seems clear that defendant's testimony to the effect that he "understood" that certain items were required to be furnished by plaintiff under the agreement; or that they had been "agreed to" by the parties were simply conclusions on his part, inadequate to form a sound basis for an agreement with respect thereto, or to justify a variance in the terms of the written statement. Bergland Oil Co. Inc. v. Grommesh, 226 Minn. 19, 31 N. W. (2d) 644; Village of Hibbing v. Township of Stuntz, 225 Minn. 31, 29 N. W. (2d) 808; Bardwell v. Witt, 42 Minn. 468, 44 N. W. 983. Likewise, the court's conclusions set forth in its memorandum that by his admission plaintiff had ac-

knowledged the existence of a contract under which he was required to perform all the work ordered by defendant for the sum of $4,000 appears entirely unjustified. All plaintiff admitted was that the work provided in the written statement would be performed by him for the sum of $4,000 if such work was done "our way." It is obvious that thereby plaintiff meant that the work to be performed by him and the manner of its performance was indicated and limited by the statement of November 6, 1958. Certainly, this was not a concession by him that all the obligations that defendant "understood" rested upon plaintiff had actually been undertaken by him. That the work went far beyond the requirements of the written statement is quite obvious from testimony submitted.

3. Further, I have difficulty in ascertaining the basis of the court's finding that plaintiff was entitled to only the sum of $4,581.08 for the labor and material furnished by him. Defendant stipulated that certain of the modifications ordered by him as the work progressed were of the value of $1,175.91 over the $4,000 figure. His expert witness estimated the total value of the construction at between $5,000 and $5,500. Plaintiff's books and records established that the cost of the labor and material furnished by him therein equaled the sum of $8,715.13. The reasonableness of such charges was not disputed by defendant and his repeated requests for alterations, modifications, and additions as the work progressed accounted for much of the additional cost. At the end of each month statements covering items furnished during the month were forwarded to him by plaintiff's bookkeeper, and he did not deny receiving them. Certainly such evidence would require a finding of an amount due in excess of that determined by the court.

4. By virtue of all the foregoing, I have serious doubt as to whether the evidence submitted herein is adequate to support the court's findings and conclusions as to the terms of the agreement between the parties; as to the value of items of labor and material required to be furnished by plaintiff thereunder; and as to the basis of payment therefor. Under the circumstances presented, and in view of the rather free reception of evidence definitely too inconclusive to form a sound

basis for establishing the terms of such an agreement, or to allow a variance in the terms of the written statement of November 6, 1958, I am of the opinion that in the interests of justice the case should be remanded for new trial. At that time, the parties should be limited to material and relevant evidence deemed requisite to establish the exact terms of their agreement, the work to be performed by plaintiff thereunder, and the basis of payment therefor—quantum meruit or a fixed price. In view of the fact that such issues appear to be dependent upon what the parties agreed to on November 6, 1958, or upon any subsequent modification of their agreement of that date, applicable rules of evidence governing their determination should be strictly applied.

5. Further, I am of the opinion that plaintiff should not be held to have lost his lien rights for any balance found due him. It is undisputed that the labor and material which he furnished included many items of labor and material which defendant had directed that plaintiff's employees furnish, and concerning which plaintiff was not consulted. Accordingly, since there is nothing in the statement of November 6, 1958, making reference to such items, it would seem clear that plaintiff was justified in assuming that he would be paid the reasonable value thereof. His monthly statements forwarded to defendant established that he furnished labor and material on the project of the value of $8,715.13. Defendant made no attempt to controvert the reasonableness of these charges, or to show bad faith or fraudulent conduct on the part of plaintiff therein. In Aaby v. Better Builders, Inc. 228 Minn. 222, 226, 37 N. W. (2d) 234, 236, where we upheld plaintiff's lien rights under § 514.74, we stated:

"In the cases cited [denying lien rights], the court found that the lienors had *intentionally* demanded more in their lien statements than was justly due them, with a motive amounting almost to bad faith. Here, plaintiff has been guilty of no bad faith nor fraudulent intent. * * * He has not *knowingly,* as used in § 514.74, demanded more than was justly due him."

See, also, Ternes v. Westberg, 246 Minn. 485, 75 N. W. (2d) 415.

Under these decisions, the basis for denying lien rights under § 514.74

was held to rest upon evidence establishing the bad faith or fraudulent conduct of the lien claimant. Here, where there is nothing to support a finding that plaintiff was guilty of any such misconduct in filing his lien, I believe that his lien for whatever amount is due him should be upheld as valid and enforceable.

OTIS, JUSTICE (dissenting).

I join in that part of Mr. Justice Thomas Gallagher's opinion dissenting from a denial of plaintiff's lien rights.

ROGOSHESKE, JUSTICE (dissenting).

I concur in that part of Mr. Justice Thomas Gallagher's opinion dissenting from a denial of plaintiff's lien rights.