**FIRST BANK SOUTHDALE,**
**Respondent,**

v.

**Sharon KINNEY, Defendant,**

**Ruth Usem, Appellant,**

**David Tolchiner, d/b/a Music for Your Ears, Respondent.**

No. C8–86–454.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Robert A. Blaeser, Minneapolis, for First Bank Southdale.

John W. Getsinger, James V. Roth, Minneapolis, for Ruth Usem.

Alan G. Greenberg, Minneapolis, for David Tolchiner, d/b/a Music for Your Ears.

Heard, considered and decided by LANSING, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

On cross-motions for summary judgment, the trial court granted summary judgment in favor of David Tolchiner. Ruth Usem appeals from the judgment entered on December 23, 1985. We reverse.

## FACTS

Sharon Kinney purchased a pickup truck on March 27, 1984 on an installment contract financed by First Bank Southdale. Ruth Usem, a friend of Kinney's, co-signed the installment contract as a favor to Kinney.

On April 13, 1984, Kinney went to David Tolchiner's car stereo shop to have a stereo system installed in her truck. Bernie Deasis, another friend of Kinney's, brought in her own vehicle to have a similar car stereo system installed. Later that day, Kinney and Deasis returned together to pick up the Deasis vehicle. Although Tolchiner had completed work on only the Deasis vehicle, Kinney wrote a check for $970.30 to cover the work on both vehicles. Kinney intended to return later to pick up her truck.

Tolchiner telephoned Kinney's bank to ascertain whether her check for $970.30 would clear and was informed that it would not. Later that same day, when Kinney returned for her truck, Tolchiner told her that he would not release her vehicle until the installation charges on both vehicles were paid. Kinney responded that there was a mix up with her bank account and that she would take care of the problem. On April 27, 1984, however, Kinney's check was returned unsatisfied because Kinney's account apparently had been closed.

Thereafter Tolchiner and Deasis attempted to negotiate a payment plan for the stereo installation in the Deasis vehicle. Tolchiner received $55.40 on May 3, 1984 as partial payment, and Tolchiner and Deasis agreed that she would pay $50.00 per week until the bill was completely paid. After May 3, however, Deasis failed to pay as agreed. On advice of counsel, Tolchiner had no further conversations with Deasis after talking with her in late May 1984.

On April 23, 1984, Tolchiner went to Kinney's apartment and demanded payment for both vehicles. In addition, Tolchiner brought a handwritten bill on his stereo shop's stationery containing a storage charge for Kinney's truck of $50 per day for the period of April 14 to April 23. The total storage charge amounted to $450, an amount Tolchiner claimed was minimal in comparison to the loss of income he suffered as a result of having to store Kinney's truck in one of his garage stalls. The bill also demanded partial payment by May 4, 1984 and the balance by May 25, 1984. Kinney signed the bill, and Tolchiner threatened legal action if Kinney failed to pay in full.

Kinney failed to pay, and as a result, Tolchiner turned to Usem for payment in July 1984. Tolchiner demanded payment of $970.30 for both stereo systems in addition to a storage charge of $50 per day since April 13. Tolchiner thereafter sought to settle with Usem for $2,500, but later reduced his demand to $1,500.

In September 1984 First Bank Southdale sought to replevy Kinney's truck from Tolchiner because Kinney failed to make payments. Tolchiner opposed the motion, claiming that he enhanced the value of Kinney's truck by $970.30 and that he had continuously stored it from April 13 until June 1 at $50 per day. On September 10, 1984, First Bank Southdale's motion for prejudgment replevin was granted, with the condition that First Bank Southdale file a $9,000 bond as security for the possessory lien claimed by Tolchiner.

After the trial court granted First Bank Southdale's prejudgment replevin motion, Tolchiner moved (even though he had never answered First Bank Southdale's complaint or filed a complaint of his own) to recover $3,850.30 out of the replevin bond posted to secure the amount claimed under his possessory lien. In his affidavit of November 21, 1984, Tolchiner claimed that he was entitled to reimbursement in the amount of $970.30 plus storage at a rate of $15 per day (not $50 per day) since April 13, 1984. Tolchiner stated that because of nonpayment, the truck was stored at his place of business and effectively tied up an income producing stall in his garage. At his deposition, Tolchiner admitted that he never checked on the cost of storing the vehicle elsewhere. The trial court denied Tolchiner's motion.

On April 29, 1985, Tolchiner filed an answer to First Bank Southdale's complaint, a counterclaim against First Bank Southdale, and a cross-claim against Usem and Kinney. In his cross-claim, Tolchiner sought $950 for the stereo installation in both cars and $2,880 in storage fees ($15 per day from April 13 to October 22, 1985). At the time the location of Deasis and Kinney was unknown, and thus Tolchiner sought recovery from Usem alone for work completed on both vehicles in addition to a storage charge.

Thereafter, both Usem and Tolchiner moved for summary judgment. Usem, in addition to raising a constitutional issue regarding Minn.Stat. §§ 514.18, .19 (1984), argued that Tolchiner forfeited any right to a possessory lien by demanding an excessive amount in order to satisfy the purport-

ed lien. *See id.* § 514.74. Tolchiner argued that he was entitled to judgment in the amount of $3,394.91 under the possessory lien law. *See id.* §§ 514.18, .19.

The trial court granted Tolchiner summary judgment, and awarded him $514.91 for the radio installation in Kinney's truck and $633 for storage costs (thirty days at $5.00 per day plus 161 days at $3.00 per day). The trial court determined that Tolchiner's claimed lien was not extinguished by his excessive demands because he believed Kinney authorized the work on Deasis vehicle, both Kinney and Deasis picked up the Deasis vehicle, and because Kinney paid for the installations with a bad check. Usem appeals. This case will be decided on the merits without a respondent's brief pursuant to rule 142.03 of the Minnesota Rules of Civil Appellate Procedure by order of this court dated June 3, 1986.

## ISSUE

Did Tolchiner intentionally claim an excessive amount as his lien, thereby extinguishing his purported lien under Minn. Stat. § 514.74 (1984)?

## ANALYSIS

Under section 514.74, a lien does not exist if the claimant has "knowingly demanded in the [lien] statement more than is justly due." Minn.Stat. § 514.74 (1984). In *Delyea v. Turner*, 264 Minn. 169, 118 N.W.2d 436 (1962), the supreme court stated that a lien will be defeated under section 514.74 on a showing of "fraud, bad faith, or an intentional demand for an amount in excess of that due." *Id.* at 175, 118 N.W.2d at 440.

Usem argues that that is exactly what happened here, that Tolchiner extinguished his claimed lien by intentionally claiming more than was actually due. The trial court disagreed, and stated as follows:

> Because there is testimony that Tolchiner believed that Defendant Kinney authorized the work on the Deasis vehicle, that Kinney and Deasis picked up the Deasis vehicle together, and that Kinney paid for the work with a check

(that was subsequently found to be I.S. F.), this court holds that fraud, bad faith, or intentional demand for more than is due has not been sufficiently established by the evidence; and thus Defendant Tolchiner's lien is not extinguished on the Kinney vehicle.

We conclude that Tolchiner intentionally claimed an amount greater than that to which he was entitled, and therefore his purported lien was extinguished under section 514.74. *See* Minn.Stat. § 514.74 (1984). Tolchiner's original demands for $50 per day storage were unwarranted. He himself later reduced them to $15 per day, an admission in itself that the original charges were excessive. As in *Delyea*, "[t]he amount claimed is so excessive as to preclude the likelihood of a mistake made in good faith." *Delyea*, 264 Minn. at 176, 118 N.W.2d at 441.

## DECISION

Tolchiner's purported lien was extinguished under section 514.74 due to the excessive amount he claimed. Because we decide the case on this ground, we do not reach the constitutional issue raised by Usem.

Reversed.