RAY J. BIERLEIN AND ANOTHER, COPARTNERS d.b.a. CHASKA CONSTRUCTION COMPANY, v. THEODORE J. GAGNON AND OTHERS.

96 N. W. (2d) 473.

April 3, 1959—No. 37,559.

144

*Wallace C. Odell* and *Odell & Odell*, for appellants.

*M. L. Stahlke* and *Palmer B. Rasmusson*, for respondents.

KNUTSON, JUSTICE.

This is an appeal from an order denying defendants' motion for amended findings of fact, conclusions of law, and order for judgment or, in the alternative, for a new trial in a proceeding to foreclose a mechanics lien.

Sometime prior to 1954 defendants decided to build a house on the hills overlooking the Minnesota River Valley not far north of the city of Shakopee. The description of the tract of land on which they desired to build is of no importance to a decision of this case.

During the early part of 1954, defendants employed Thorshov & Cerny, an architectural firm in Minneapolis, to prepare for them detailed plans and specifications for the home they wished to build. Such plans and specifications were completed during the summer of 1954 and were submitted to several contractors in the Twin Cities area for the purpose of procuring bids. The bids received were opened in the office of the architects on October 28, 1954, and ranged from $36,000 to $45,000. After a discussion with the architects, defendants rejected all bids. It was the opinion of the architects that substantial savings

could be made in labor and material by using a builder and procuring material from a source closer to the land on which the house was to be built.

Thereafter, defendants called at the Henry Simons Lumber Company in Chaska and discussed building the house with them. On the first visit they refused to disclose their names or where they intended to build the house because they did not want to be solicited for the business. However, at a later visit they did so, and, through the manager of this lumber yard, Paul J. Murphy, they met Ray J. Bierlein, one of the copartners of Chaska Construction Company, plaintiffs in this action. The plans and specifications theretofore prepared by Thorshov & Cerny were submitted to Bierlein so that he could prepare an estimate of the cost of constructing the house. After procuring estimates on the cost of plumbing, wiring, material, and other items which probably would be sublet and which were essential to the complete construction of the house, and on the basis thereof, he estimated that the house, in order to be built according to the plans and specifications of the architects, would cost $45,000. Thereafter, at the request of defendants, the plans and specifications were altered by Henry Simons Lumber Company with the object of reducing the cost. Defendants stated that they wanted to keep the cost down to about $28,000. From this point on the testimony of plaintiffs and defendants is in irreconcilable conflict. Defendants claim that plaintiffs undertook to build the house for $28,000. Plaintiffs claim that on the basis of the revised plans and specifications they estimated that the house could be built for $34,000. No written contract was ever entered into. Construction began in the late fall of 1954 and was discontinued in 1956 after the house was substantially completed. Defendants have paid plaintiffs $11,000 to appy upon the cost. Failing to obtain payment of the balance claimed to be due, plaintiffs filed a mechanics lien.

In the trial of a foreclosure of the mechanics lien, the court found that plaintiffs were entitled to recover, in addition to what they had been paid, the sum of $22,163.58 and ordered a sale of the premises to pay the unpaid balance and expenses of the foreclosure, including an attorney's fee of $3,000. On this appeal from an order denying their motion for amended findings, conclusions of law, and order for

judgment or for a new trial, defendants contend: (1) That the evidence compels a finding that the parties entered into an oral contract under which plaintiffs were obligated to build the house for $28,000; (2) that the evidence does not sustain a finding that plaintiffs' contribution in labor and material was of the reasonable value found by the court; (3) that the evidence compels a finding that plaintiffs knowingly filed a lien statement claiming more than was justly due; (4) that plaintiffs are estopped from claiming more than $28,000; and (5) that the attorneys' fees allowed by the court are excessive.

■ In contending that the evidence compels a finding that the parties entered into a contract under which plaintiffs were obligated to build the house according to the plans and specifications as revised by Henry Simons Lumber Company, defendants would have us disregard the testimony of Ray J. Bierlein and other supporting evidence. Even defendants' own testimony does not bear them out. We may admit, for the purpose of this decision, that defendants continually insisted that they wanted to keep the cost at $28,000, but that of itself does not establish a contract in the face of plaintiffs' testimony that they continued to advise defendants that the house could not be built for that amount. It is evident from an examination of the evidence that the parties never did come to a common understanding as to the cost of the house. Defendant Theodore J. Gagnon, among other things, testified:

"From the time the basement was begun we tried to have several discussions with the Chaska Construction Company to arrive at a figure, and there was plenty of time for that, but all I got was evasions."

Further than that, after the house was started, numerous changes were made at the request of defendants, adding to the cost. Among others, it might be mentioned that the house was made 2 feet wider than the original plans called for, at the request of defendants; heating was changed from hot air to hot water; the location of windows and the type of construction of a fireplace were changed; and much work which originally had been done had to be done over again because of changes desired by defendants. Defendants admitted that they expected that these changes would add to the cost. They claim that the increased costs occasioned by some of the changes were offset by

other changes which decreased the cost, but the evidence amply sustains a finding that the many changes that were made added materially to the cost of the house. The manner in which the cost of these changes was handled belies the existence of a contract. Nowhere does there appear any evidence that the parties agreed on the cost of such changes or that the parties should be given either a credit or a debit therefor. If there had been a contract, surely the parties would have agreed also on who was to stand the expense of the increased costs or receive credit for decreased costs, when there were such, and how much they should be.

At one time plaintiffs furnished a statement to Twin City Federal Savings and Loan Association in which they estimated the cost of the house would be $28,882.11. The statement was in support of defendants' application for a loan. Defendants claim that this statement shows that plaintiffs had entered into a contract to build the house for that amount. At best, it was only an estimate intended to assist defendants in obtaining a loan. It was not conclusive on the issue of whether the parties had entered into a contract. Its evidentiary value was for the trial court to determine.

Without going into more detail, we are convinced that the evidence sustains the court's finding that the parties never did enter into a contract. At best, there was only an estimate by plaintiffs, which was materially affected by changes requested by defendants, and a desire on the part of defendants that the cost be kept down to the figure which they mentioned.

■ Defendants claim that the evidence does not sustain the court's finding as to the reasonable value of material and labor contributed by plaintiffs. The correctness of the statement as to the material furnished by the lumber company is not challenged. The testimony is that it was all delivered to the site of the building. Plaintiffs testified fully as to the labor furnished, which was substantiated by their time books. While they charged defendants more than they paid their hired help, there is no showing that such additional charge was more than a reasonable amount to compensate them for use of equipment, expenses such as workmen's compensation insurance premiums and social security payments, and a reasonable profit. We see no need for an extended

discussion of this claim. Obviously, on the record, it was a matter requiring the trial court's consideration, and the evidence so clearly sustains the court's finding that there is no ground for action by us.

■ Defendants next contend that plaintiffs have violated M. S. A. 514.74, which as far as material reads:

"* * * In no case shall a lien exist for a greater amount than the sum claimed in the lien statement, nor for any amount, if it be made to appear that the claimant has knowingly demanded in the statement more than is justly due."

In construing this statutory provision in Ternes v. Westberg, 246 Minn. 485, 488, 75 N. W. (2d) 415, 417, we said:

"An honest mistake does not defeat the lien under the above statutory provision nor does the mere failure to prove items claimed in the lien statement. Before a lien claimant may be deprived of his lien under this statute there must be some showing of fraud, bad faith, or an intentional demand for an amount in excess of that due."[1]

We find no merit in defendants' discussion of the applicability of this statute. As an example of the alleged "padding" of the account, defendants claim that plaintiffs charged $2.50 for the labor they hired, while they paid the laborers from $1.50 to $2.10 per hour. We have already discussed the reasonableness of the additional charge made for such labor. As to the material which defendants claim was charged and not used on the job, the evidence is that it was all delivered to the job. There is no evidence that plaintiffs knowingly included any item not used.

■ Defendants argue that plaintiffs were estopped to claim more than $28,000 because they proceeded with the work knowing that defendants insisted throughout that the cost could not exceed that figure. They overlook the testimony of plaintiffs that they continuously informed defendants that the cost of the building would exceed that amount. Defendants admit that they sought to get figures on the cost as they went along. In the absence of a definite agreement on the part of plaintiffs, it would seem that the burden rested on defendants to stop the work

---

[1] See, also, Aaby v. Better Builders, Inc. 228 Minn. 222, 37 N. W. (2d) 234.

if they did not wish to proceed; otherwise they were liable for the reasonable value of the work which they permitted plaintiffs to do. We see no ground for an estoppel.

■ Finally, defendants contend that the allowance of $3,000 as attorneys' fees is excessive.

Ordinarily, attorneys' fees are not allowable in the absence of statutory authority.[2] Our statute and decision law are not entirely clear as to what fees may be allowed in the foreclosure of a mechanics lien. The only statutory authority for allowance of fees at all is found in § 514.14, which, as far as material, reads:

"* * * Judgment shall be given in favor of each lienholder for the amount demanded and proved by him, *with costs* and disbursements to be fixed by the court at the trial, * * *." (Italics supplied.)

We have held that the trial court may allow reasonable attorneys' fees as part of the costs under this statutory provision.[3] Some indication of the legislative restriction on the maximum amount which may be allowed as a reasonable attorneys' fee in the foreclosure of a mechanics lien may be found in § 514.10, which provides, among other things, that, when an action is brought to enforce a mechanics lien, application may be made to have the property released from the lien. The pertinent portion of this statutory provision reads:

"* * * Upon a hearing upon an application the court shall fix a sum of money to be deposited by the applicant with the clerk of the district court, which sum shall not be less than the aggregate amount of, (1) the amount claimed in the lien statement, (2) $18 for every $100 or fraction thereof, to cover interest, (3) the probable disbursements in an

---

[2]See, Barrett v. Hampe, 237 Minn. 80, 53 N. W. (2d) 803.

[3]Schmoll v. Lucht, 106 Minn. 188, 118 N. W. 555; Anderson v. Donahue, 116 Minn. 380, 133 N. W. 975; Lindquist v. Young, 119 Minn. 219, 138 N. W. 28; Behrens v. Kruse, 121 Minn. 90, 140 N. W. 339; Middelstadt v. Kostendick, 144 Minn. 319, 175 N. W. 553; Barrett v. Hampe, *supra.* Many authorities hold statutes allowing attorneys' fees in such cases are unconstitutional. See, 36 Am. Jur., Mechanics' Liens, § 291; 57 C. J. S., Mechanics' Liens, § 353; Annotations, 11 A. L. R. 906 and 90 A. L. R. 536; but see, Cameron v. Chicago, M. & St. P. Ry. Co. 63 Minn. 384, 65 N. W. 652, 31 L. R. A. 553.

action to enforce the claim for which the lien statement was filed, (4) *an amount not less than double the amount of attorneys' fees allowed upon the foreclosure under section 582.01,* to cover any allowance the court may make upon the trial for costs and attorneys' fees in the action or upon appeal." (Italics supplied.)

Under § 582.01, subd. 1, as amended by L. 1953, c. 454, § 1, the maximum attorney's fee that could be charged against the property where, as here, the debt exceeded $10,000 was $225, plus $50 for each added $10,000 or major fraction thereof. It is true that subd. 2 was added by the 1953 amendment[4] and reads:

"The court shall establish the amount of the attorney's fee in case of foreclosure by action,"

but the reference to § 582.01 in § 514.10 is to subd. 1 and not to subd. 2. It follows that if double the amount specified in § 582.01, subd. 1, is deposited with the clerk of court, together with the other items mentioned in § 514.10, the landowner is entitled to a release of the lien. In that case, the most the court could allow as attorneys' fees would be the amount so deposited. It is difficult to see how a larger allowance can be justified if the landowner does not avail himself of the right to procure a release of the lien.

In any event, allowance of an attorneys' fee must rest upon the reasonable value of the services rendered, where the amount is not specified in the statute. There is no evidence to establish reasonable value. Plaintiffs, and apparently the trial court, relied on the minimum fee schedule adopted by the Minnesota State Bar Association in 1952, which provides (Advisory Schedule of Minimum Fees, p. 14) that the minimum fee for foreclosure of an uncontested mechanics lien of the amount involved here shall be $150 plus 10 percent on the excess of the amount involved over $1,000. Plaintiffs contend that, in addition to the minimum recommended for foreclosure of an uncontested lien, they are entitled to a per diem fee for 7 days of trial. The combination of these fees, they argue, is less than the amount which the court allowed.

We do not think that plaintiffs' contentions are tenable. In the first

---

[4]See, M. S. A. 1949, § 582.01.

place, the minimum fee schedule is intended to govern minimum charges between attorney and client. No such relationship exists here between defendants and plaintiffs' attorney. While the minimum fee schedule may, in a proper case, serve as a guide in determining what is reasonable, it cannot be used to supersede a statutory provision limiting the amount of such fee, nor can it be used in a case such as this to replace a determination of reasonable value. In the second place, it is obvious that the minimum fee recommended for foreclosure of a mechanics lien includes a collection fee based on the amount involved. A comparison of the minimum fee recommended for the foreclosure of a mechanics lien with the maximum fee allowed for the foreclosure of a mortgage under § 582.01, subd. 1, easily demonstrates that the minimum fee recommended as charges between attorney and client can hardly be used as a criterion in determining what should be allowed by the court in a case of this kind. In other words, the entire cost of foreclosure and collection recommended by the minimum fee schedule cannot be saddled upon the landowner. The amount which may be allowed may not exceed a reasonable charge for the work involved in foreclosing the lien. In an ordinary case, that may not exceed the amount indicated by § 514.10. Inasmuch as the allowance in this case is determined on an erroneous basis, there must be a new trial on that issue. In order to obviate the necessity of such new trial, the order will be affirmed if within 10 days plaintiffs shall file in the office of the clerk of this court a consent to a reduction of the attorneys' fees allowed to the sum of $500; otherwise a new trial is granted on the issue of attorneys' fees.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On May 15, 1959, the following opinion was filed:

PER CURIAM.

Respondents appeal from the clerk's taxation of costs and disbursements.

Allowance of statutory costs is discretionary with the court.[5] Disbursements are recovered by the prevailing party as a matter of right.[6] Occasionally difficulty arises in determining who is a prevailing party. When

[5] M. S. A. 607.01.
[6] 5 Dunnell, Dig. (3 ed.) § 2226.

the court reverses, overrules, or modifies the judgment or order from which the appeal is taken, the appellant is the prevailing party.[7] We have held that where on appeal attorneys' fees are eliminated *by this court* appellant was the prevailing party even though respondent otherwise prevailed on the merits.[8] On the other hand, we have held that where an order or judgment from which an appeal is taken is affirmed on condition that respondent consent to a remittitur costs would not be allowed.[9] We think that the same rule should apply with respect to disbursements. In such case, the remittitur is not by order of this court but by consent of respondent. Where a case can be disposed of without a reversal, by a remittitur based upon consent of a respondent, we think that it is unjust and unfair that such consenting respondent should be saddled with the costs and disbursements of the appeal. Such simple disposition of an appeal should be encouraged where it can be accomplished. We now hold, therefore, that where an order or judgment from which an appeal is taken is in all respects affirmed on the merits on condition that the respondent consent to a remittitur, and the respondent files such consent, the respondent is the prevailing party and entitled to tax his disbursements. Taxation of costs of the clerk herein is reversed with directions to tax disbursements in favor of respondents. No statutory costs will be allowed.

---

[7] 5 Dunnell, Dig. (3 ed.) § 2228.

[8] Chicago & N. W. Ry. Co. v. Verschingel, 197 Minn. 580, 589, 268 N. W. 2, 709.

[9] Altona v. Electric Mfg. Co. 142 Minn. 358, 172 N. W. 212.