**R.B. THOMPSON, JR. LUMBER COMPANY,** Plaintiff (C5–85–1325, C8–85–1917, C2–85–1945, C4–85–1977), Appellant (C7–85–1374, C8–85–1903, C1–85–1919), Respondent (CX–85–1918, C9–85–1957, C6–85–1978),

v.

**WINDSOR DEVELOPMENT CORPORATION, et al.,** Defendants (C5–85–1325, C7–85–1374, C8–85–1903, C8–85–1917, CX–85–1918, C1–85–1919, C2–85–1945, C9–85–1957, C4–85–1977, C6–85–1978),

**Rothschild Financial Corporation,** Appellant (C5–85–1325, C8–85–1917, CX–85–1918, C9–85–1957, C4–85–1977, C6–85–1978), Respondent (C7–85–1374, C8–85–1903, C1–85–1919, C2–85–1945),

**Taping, Inc., et al.,** Respondent (C8–85–1903, C8–85–1917, CX–85–1918, C1–85–1919), Appellants (C2–85–1945),

**Wooddale Builders,** Respondent (C7–85–1374, C1–85–1919), Defendant (C5–85–1325, C4–85–1977, C4–85–1476),

**James L. Buckingham, d.b.a. Buckingham Painting and Decorating,** Respondent (C7–85–1374, C8–85–1903, C1–85–1919), Defendant (C9–85–1957, C6–85–1978),

**Kullberg Manufacturing Company,** Respondent (C7–85–1374, C8–85–1903, C1–85–1919), Defendant (C8–85–1917, CX–85–1918, C4–85–1977, C4–85–1476),

**Monson-Bell Bricklayers, Inc.,** Respondent (C7–85–1374, C8–85–1903, C8–85–1917, CX–85–1918, C1–85–1919, C4–85–1977),

**Eagle Wiring Company,** Respondent (C7–85–1374, C1–85–1919),

**Turner Excavating Company,** Respondent (C5–85–1325, C7–85–1374, CX–85–1918),

**George Sedgwick Heating and Air Conditioning Co., Inc.,** Respondent (C5–85–1325, C7–85–1374, CX–85–1918, C1–85–1919, C4–85–1977),

**O.B. Thompson Electric Company,**
**Respondent (C8–85–1903,**
**C6–85–1978).**

Nos. C5–85–1325, C7–85–1374, C8–85–1917,
C1–85–1919, C9–85–1957, C8–85–1903,
CX–85–1918, C2–85–1945, C4–85–1977
and C6–85–1978.

Court of Appeals of Minnesota.

March 11, 1986.

Review Denied May 21, 1986.

Peter J. McCall, St. Paul, for Rothschild Financial Corp.

Curtis D. Smith, Minneapolis, for R.B. Thompson, Jr. Lumber Co., Taping, Inc., et al., Wooddale Builders, James L. Buckingham, d.b.a. Buckingham Painting and Decorating, Kullberg Mfg. Co., Monson-Bell Bricklayers, Inc., Eagle Wiring Co., Turner Excavating Co., George Sedgwick Heating and Air Conditioning Co., Inc., and O.B. Thompson Elec. Co.

Heard, considered, and decided by POPOVICH, C.J., WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

This is a consolidated appeal from judgments in ten mechanic's lien actions consolidated for trial.

In C4–85–1977, the trial court found that mechanic's liens of the claimants were prior to mortgages held by Rothschild Financial Corporation. Rothschild contends that the trial court erred in fixing the date of first improvement for purposes of priority. We affirm.

In C2–85–1945, the trial court found that mortgages held by Rothschild were prior to mechanic's liens of the claimants. The claimants contend that the trial court erred in fixing the date of first improvement for purposes of priority. We reverse.

In C2–85–1945, Rothschild mortgages were found to precede the liens. The lien claimants contend that the trial court erred in finding that the loan advances were obligatory rather than optional. We reverse and remand.

In C5–85–1325, C8–85–1917, CX–85–1918, C9–85–1957, C4–85–1977, and C6–85–1978, Rothschild raises various issues in contending that the trial court erred in finding certain mechanic's liens valid. We affirm.

In C7–85–1374, C8–85–1903, and C1–85–1919, the trial court found that R.B. Thompson Lumber Company was not entitled to mechanic's liens. Thompson contends that the trial court erred in finding that Thompson did not deliver materials to the properties within the 120-day period preceding the filing of its liens. We reverse.

In C7–85–1374, the trial court did not award attorney's fees and costs to Thompson because it found that Thompson was not entitled to its mechanic's lien. Thompson contends that, if this court finds that Thompson was entitled to a mechanic's lien, then Thompson is also entitled to attorney's fees and costs. We remand.

## FACTS

While this case does involve different individual lots, the facts are essentially as stated by this court in *R.B. Thompson, Jr. Lumber Co. v. Windsor Development Corp.*, 374 N.W.2d 493 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 25, 1985).

## ISSUES

1. Are the trial court's findings concerning the dates of first improvement on the individual lots clearly erroneous?

2. Is the trial court's finding that the loan advances were obligatory clearly erroneous?

3. Are the trial court's findings that certain liens are valid and certain others are invalid clearly erroneous?

4. Is Thompson entitled to attorney's fees and costs?

## ANALYSIS

### I.

1. Priority—date of first improvement.

Rothschild contends that the staking for grading, the rough grading of the whole development, and the compaction of soil for building pads in 1981 were part of the overall project rather than bearing directly on the erection of any building in 1983. Thus, Rothschild argues that such improvements for the overall subdivision may not be used in determining the "actual and visible beginning of the improvement on the ground" of individual lots and buildings. Rothschild submits that, based upon existing case law, the relevant date for determining priority is either the staking of the building or the beginning of the excavation for the building itself (the beginning of the first work which is directly related to the construction of the building).

In the prior case, we held that the staking of the building pad can constitute the first visible improvement. 374 N.W.2d at 497. That decision is affirmed in the companion case issued contemporaneously with this case (J. Sedgwick), 383 N.W.2d 357.

 In C4–85–1977, the trial court found that grade staking, construction of the building pad, installation of a water top box, and placement of an elevation stake all took place before Rothschild's mortgage was recorded. Thus, the trial court properly ruled that the lien claimants had priority over the mortgage.

 In C2–85–1945, however, the trial court held that Rothschild had priority over the lien claimants. The trial court acknowledged that the building pad had been constructed, but noted that the excavator could not specifically testify that grading stakes remained visible on that particular lot at the time the mortgage was recorded. The trial court referred to photographs taken seven days after the mortgage was filed which "do not show the presence of any stakes or other visible improvements on the land." At trial, however, the excavator testified that he cut down the level of this lot three to five feet, and pushed the dirt onto adjoining lots. Such significant grading in addition to the building pad was certainly an improvement which would be visible to anyone conducting a reasonably diligent inspection of the lot. Under the logic expressed in the prior case and the companion case to this case, the trial court was clearly erroneous in finding that there were no visible improvements prior to the recording of Rothschild's mortgage. Thus, we reverse the trial court and hold that the lien claimants had priority over Rothschild's mortgage.

2. Priority—obligatory or optional advances.

 This precise issue was decided in the prior case, *id.* at 498, and we again reverse the trial court. Rothschild's advances were optional and have priority over mechanic's liens only for the amounts advanced up to the attachment of the liens. We remand for a determination of these amounts.

3. Validity of liens.

Rothschild contends that certain lien claims were invalid because the claimants' last items of labor were nominal in amount and furnished solely to protect their lien rights. This issue was decided in our prior case, *id.*, and we again affirm the trial court.

Rothschild also contends that certain lien claims were invalid because the last items were furnished pursuant to a separate contract. This argument was rejected in our prior case, *id.*, and we again affirm trial court.

Rothschild also contends that certain liens were invalid because the lien statements included amounts in excess of the contract prices. This issue was decided in our prior case, *id.*, and we again affirm trial court.

 Finally, Rothschild contends that the trial court erred in finding that certain lien waivers executed by Thompson were fraudulently induced and should be rescinded. However, the record contains suffi-

cient evidence to support the trial court's finding. Rothschild represented that the mortgages given in return for the lien waivers would be second mortgages. That was a representation of existing fact. However, on the day the waivers were executed, there were already two mortgages on each of the lots. In fact, Thompson received a mortgage that was fourth in priority. The trial court is affirmed on this issue.

Thompson contends that the trial court was clearly erroneous in finding that certain last items in C7–85–1374, C8–85–1903, and C1–85–1919 were not delivered to the particular lots. We agree. For all three lots, the delivery invoice showed that the materials went to the common area of the quad units rather than to the specific unit. However, Minn.Stat. § 514.09 (1984) allows a lienholder to file one statement for improvements to two adjoining lots which are under one contract with the owner. The trial court is reversed on this issue and Thompson is entitled to its mechanic's liens.

4. Attorney's fees and costs.

Thompson contends that, if this court finds that it was entitled to a mechanic's lien only in C7–85–1374, then Thompson is also entitled to an award of attorney's fees and costs. In the preceding issue, we held that Thompson was entitled to its lien, and therefore we now add that Thompson is entitled under Minn.Stat. § 514.14 (1984) to an award of fees and costs in C7–85–1374. We remand to the trial court for a determination of the amount.

II.

We are troubled by the results obtained in these cases. However, we are constrained by the unambiguous language of Minn.Stat. § 514.05 (1984).

Prior to 1974, the mechanic's lien priority law, section 514.05, provided that the type of improvement necessary to attach priority was the excavation or erection of the building itself. *See Jesco, Inc. v. Home Life Insurance Co.*, 357 N.W.2d 123, 127

(Minn.Ct.App.1984); *National Lumber Co. v. Farmer and Son, Inc.*, 251 Minn. 100, 87 N.W.2d 32 (1957); *Carr-Cullen Co. v. Deming*, 176 Minn. 1, 222 N.W. 507 (1928); *Haupt Lumber Co. v. Westman*, 49 Minn. 397, 52 N.W. 33 (1892).

In *National Lumber Co.*, the Minnesota Supreme Court stated:

Thus it appears that the line of distinction [as to when the actual and visible beginning of the improvement on the ground has commenced as against a mortgagee] is whether or not the improvement bears directly on the construction of the building rather than whether it is a part of the overall project involved. * * * And where excavation is involved, it appears that the excavation itself or something directly connected therewith, rather than any prior activity, constitutes the beginning of the visible improvement.

251 Minn. at 104, 87 N.W.2d at 36. In a later case, the supreme court stated its reasoning:

If a preliminary survey * * * were to be held an actual and visible beginning of the improvement on the ground so that all liens filed thereafter would have priority over a mortgage given to secure advances for completion of the improvement, it is safe to say that it would be difficult, if not impossible, to procure financing for any such improvement. We do not believe that the legislature could have intended such a result.

*Reuben E. Johnson Co. v. Phelps*, 279 Minn. 107, 114–15, 156 N.W.2d 247, 252 (1968).

In 1974, the Minnesota legislature amended section 514.05 to provide liens for engineering and land surveying services:

Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, *except when such engineering or land surveying ser-*

*vices include a visible staking of the premises.*

1974 Minn. Laws 684 (emphasis added).

This amendment explicitly provides that any *visible staking* in connection with engineering or land surveying services constitutes the requisite beginning of improvement. The clear import of the amendment is that where lienable items of labor are an improvement, such items, *when visible*, constitute the "actual and visible beginning of the improvement on the ground." *See also In re Zachman Homes, Inc.*, 47 B.R. 496, 509 (Bankr.D.Minn.1984) (court construing the same amendment and reaching the same result); *Jesco*, 357 N.W.2d at 127 ("The amendment now charges mortgagees with notice of mechanic's liens whenever there is visible surveying work."). Improvements are visible if they would be found during a reasonably diligent inspection of the site. *Id.* Thus, it is clear that the 1974 amendment drastically extended the priority law by extending priority back to all reasonably visible preparatory work.

It is just as clear that this result was not intended by the Minnesota legislature. As Representative Lindstrom, speaking on behalf of the engineers and surveyors who requested the statutory change, stated:

> [T]hey don't want to change the present law. They want that to remain the same, but want to be able to get a lien * * *. * * * And so that's the reason for the amendment—not to change the present law but simply give these people a lien as they perform their services.

*Hearing on S.F. 1483 Before the House Committee on the Judiciary* (March 14, 1974). *See also Zachman*, 47 B.R. at 510–511. Unfortunately, the unambiguous language of the 1974 amendment does not bear out this intent.

■ Minnesota appellate courts are limited in their ability to effectuate legislative intent:

> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1984). Only when the words of a statute are not explicit can legislative intent be considered. *Id.* Because the language of the 1974 amendment is free from ambiguity, this court cannot disregard the explicit words of section 514.-05 in order to reach a result which comports with the clear legislative intent.

In reaching the results we do today in this case and its companion case, we are not unmindful of the extensive changes in the priority law *as it has been practiced* caused by these decisions as well as the prior *Thompson* and *Zachman* cases. From before the turn of the century, the practicing bar as well as developers and construction financiers have acted in reliance upon the understanding that priority will not attach to preparatory work such as the platting of lots, staking for grading, site grading, construction of building pads, etc.

The well-recognized custom in the industry was that priority would only attach to improvements which relate to the actual erection of the building, and certainly never before the staking for excavation. *See Zachman*, 47 B.R. at 498–499 (the court lists all the various, highly visible, preparatory work done on a site, and then states how the title company takes photographs of the lot on the day the mortgage is to be recorded, photographs which would clearly show all the preparatory improvements and which would only be detrimental to the mortgagee if priority attached to such preparatory work). By holding that housing contractors and other lien claimants may tack their liens back to any visible work done on a site, even if done *years* before the actual erection of the building, these cases inject great uncertainty into the bar and the industry.

The result of these cases is to make it difficult, if not impossible, for developers to obtain construction financing, especially from smaller local companies. The question of how many years back a lender should go in looking at preparatory work to determine priority is simply overwhelming.

Additionally, there is the specter of increased construction and consumer costs as title insurance companies attempt to measure their new risks.

Clearly, the Minnesota legislature should act to alleviate this great uncertainty.

**DECISION**

Affirmed in part, reversed in part, and remanded in part.