R.B. THOMPSON, JR. LUMBER
COMPANY, Respondent,

v.

WINDSOR DEVELOPMENT
CORPORATION, et al.,
Defendants,

Rothschild Financial
Corporation, Appellant,

Taping, Inc., Thompson Plumbing Com-
pany, George Sedgwick Heating and Air
Conditioning Co., Inc., Respondents.

No. C9–85–1473, CO–85–1474
and C4–85–1476.

Court of Appeals of Minnesota.

March 11, 1986.

Review Denied May 22, 1986.

Curtis D. Smith, Minneapolis, for R.B. Thompson Lumber Co., Taping, Inc. and George Sedgwick Heating and Air Conditioning Co., Inc.

Peter J. McCall, St. Paul, for Rothschild Financial Corp.

Robert T. York, Minneapolis, for Thompson Plumbing Co.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

R.B. Thompson, Jr. Lumber Co. brought three mechanics' lien foreclosure actions against Windsor Devt. Corp., Rothschild Financial Corp., and other subcontractors.

The three actions were consolidated and tried before the court. The trial court ruled that the mechanics' liens were prior to the mortgages of H. & Val J. Rothschild and Rothschild Financial Corp. in Case Numbers C9–85–1473 (Lot 52) and C9–85–1474 (Lot 37), and that certain subcontractors were entitled to liens in all three cases. (The third case involved lots 61 and 64, Case Number C4–85–1476.) Judgment was entered on May 9, 1985. This court ordered the three cases consolidated on appeal. We affirm.

## FACTS

This action was part of a consolidated mechanics' lien foreclosure action brought by respondent R.B. Thompson, Jr. Lumber Co., a lien claimant, against Windsor Development Corp., the owner, Rothschild Financial Corp., the mortgage lender, and other subcontractors who furnished labor and/or materials to real property developed by Windsor.

The three consolidated cases involved in this appeal arise from actions venued in Dakota County. The same parties litigated other mechanics' lien actions in Hennepin County also arising out of the demise of Windsor Development Corp. Four of the Hennepin County cases were tried in September of 1984. The September trials resulted in a decision of this court, filed September 17, 1985, entitled *R.B. Thompson, Jr. Lumber Co. v. Windsor Development Corp.*, 374 N.W.2d 493 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 25, 1985).

The remaining cases from Hennepin County are decided in *R.B. Thompson, Jr. Lumber Co. v. Rothschild Financial Corp.*, 383 N.W.2d 362 (Minn.Ct.App. 1985), also released today.

Both appeals include many of the same issues and were decided by the trial court based on virtually identical evidence submitted in the separate trials.

The cases involved in this appeal concern mechanics' liens on three different pieces of property owned and developed by Windsor Development Corp., a Minnesota corporation.

*Facts regarding Lot 37:*

In 1979 Windsor executed and delivered to H. & Val J. Rothschild, Inc. a note in the principal amount of $100,000. Simultaneously with the execution and delivery of the note, Windsor executed and delivered to Rothschild a mortgage deed covering real estate in Dakota County, lots 36–39, Block 2, Southampton. The mortgage deed was recorded on October 30, 1979.

Between August 13 and 16, 1979, Suburban Engineering, Inc. staked the entire Southampton Subdivision, including Lot 37.

This staking was for rough grading and for locating the center of the building pads. Wooden laths rose about three and one half feet above ground and were topped with a red piece of fabric. They were unobstructed and visible.

Rough grading was completed on the Southampton subdivision no later than October 4, 1979, including construction of specific building pads on all of the lots in Block 2. The building pads were also visible. No representative from Rothschild inspected the premises before filing the mortgage or anytime thereafter.

In March 1982 Taping, Inc., R.B. Thompson Jr. Lumber Co., and George Sedgwick Heating and Air Conditioning executed and delivered to Windsor lien waivers regarding work performed on Lot 37, Block 2, Southampton. To induce them to sign the waivers, executives from Windsor told the lien claimants that they would receive a second mortgage on Lot 37. According to the agreement, all other subcontractors would likewise provide lien waivers and take second mortgages.

*Facts regarding Lot 52:*

Around September 5, 1980, Rothschild Financial Corp. loaned $100,000 to Windsor. To secure payment, Windsor executed a mortgage deed covering lots 51–54, Block 2, Southampton. The deed was recorded on September 8, 1980 at 11:00 am.

Between August 13 and August 16, 1979, Suburban Engineering, Inc. staked the entire Southampton Subdivision, including lot 52. The staking was for rough grading and construction of building pads. As in the case of lot 37, wooden laths, topped with a piece of red fabric, were unobstructed and visible.

Taping, Inc., R.B. Thompson, Jr. Lumber Co., and George Sedgwick Heating and Air Conditioning executed and delivered to Windsor lien waivers regarding work performed on Lot 52, block 2, Southampton. Again, Windsor executives told the lien claimants that they would receive a second mortgage on Lot 52 and that all other subcontractors would likewise provide lien waivers. These representations were false,

since all subcontractors did not agree to provide lien waivers and the mortgages received were fourth, not second, in priority. .

*Facts regarding Lots 61 and 64:*

In September 1980, Windsor executed and delivered to Rothschild Financial Corp. a note in the amount of $100,000. At the same time, Windsor delivered a mortgage to Rothschild to secure payment of the note. The mortgage deed was recorded on October 16, 1980.

The parties stipulated that the date of the actual and visible beginning of the improvement on the ground at lots 61 and 64 began before October 16, 1979, the date of the filing of the Rothschild mortgage.

## ISSUES

1. Did the trial court err in finding that the mechanics' liens are prior and superior to the first mortgages on Lots 37 and 52, held by H. and Val J. Rothschild, Inc. and Rothschild Financial Corp., respectively?

2. Did the trial court err in finding that the liens were valid?

   a. Was the last item of work performed by the lien claimants nominal labor or materials, furnished solely to renew expired lien rights; or, was the last item of work furnished pursuant to separate contracts from the original contract with Windsor Development Corp.?

   b. Did the fact that the claimants originally demanded more on their lien statements than was due (to make up for past debts) render their liens void under Minn. Stat. § 514.74 (1984)?

   c. Did the trial court err in finding that the lien waivers were fraudulently induced?

3. Did the trial court err in joining H. & Val J. Rothschild, Inc. as a party defendant to this action?

4. Did the trial court err by not allowing Sedgwick Heating and Air Conditioning to add H. and Val J. Rothschild as a defendant because Sedgwick failed to appear

at the hearing on the motions to amend the complaint?

5. Did the trial court err by denying attorney fees for Sedgwick?

## ANALYSIS

### 1. *Priority of mechanics' liens:*

There is a priority dispute only regarding lots 37 and 52. The parties all agree that some work had been done on lots 37 and 52 before the recording of Rothschild's October 1979 and September 1980 mortgages, namely: a) grade staking and b) locating the center for the building pads. The question is whether the mortgages were recorded before the "actual and visible beginning of the improvement on the ground."

The priority provision of the mechanics' lien statute provides in part:

WHEN LIEN ATTACHES; NOTICE

All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. *As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground,* but a person having a contract for the furnishing of labor, skill, material * * * may file * * * a brief statement of the nature of such contract, which statement shall be notice of his lien. *Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, except when such engineering or land surveying services include a visible staking of the premises.*

Minn.Stat. § 514.05 (1984) (emphasis added). (The last sentence was added by a 1974 amendment, 1974 Minn.Laws, ch. 381, § 2.)

Appellants argue that the relevant date for determining priority is the date of either the staking of the building or the beginning of the excavation for the building itself.

This issue has been thoroughly discussed in *In re Zachman Homes, Inc.,* 47 B.R. 496 (D.Minn.1984):

The statutory wording of sections 514.-01 and 514.05, as illuminated by the 1974 amendments and their legislative history, evinces a clear intent to protect the interest of all mechanic's lien claimants over those of the mortgagees as of the time the first item of lienable labor contributes to the improvement on the ground in a manner reasonably visible to such mortgagees. Section 514.05 draws no distinction between preparatory work and labor contributed to the actual erection of the improvement. Moreover, it would be materially inconsistent to allow liens to attach upon the visible staking of the premises, as explicitly provided for in the statute, but not upon generally subsequent and more visible beginnings of an improvement such as clearing, grading, and filling of the premises.

*Id.* at 511 (footnote omitted); *see R.B. Thompson, Jr. Lumber Co. v. Windsor Development Corp.,* 374 N.W.2d 493, 497 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. November 25, 1985); *see also Jesco, Inc. v. Home Life Insurance Co.,* 357 N.W.2d 123 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. February 5, 1985).

Whether the work done constitutes the actual and visible beginning of the improvement is a question of fact. *Kloster-Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 64, 226 N.W.2d 603, 607 (1975). The trial court found that significant grade staking and site grading on the land existed long before the filing of the first mortgages on October 29, 1979 (Lot 37) and September 8, 1980 (Lot 52). These findings are supported by the evidence. The trial court properly ruled that the lien claimants had priority over the mortgages in Lots 37 and 52.

2. *Validity of Liens:*

2a. Last item of work:

■ The trial court found that the last items of work were necessary and not done merely to revive expired lien rights. Although the last items of work occurred some time after the major share of the contracted work was performed, there was testimony that these items of work may have been needed because of construction damage, and therefore were necessary to prepare the property for sale.

The trial court's finding that the work performed was at the request of the owner and part of a continuous operation is adequately supported by the evidence.

2b. Excess demand on lien statements:

Minn.Stat. § 514.74 (1984) provides in part:

In no case shall a lien exist for a greater amount than the sum claimed in the lien statement, nor for any amount, if it be made to appear that the claimant has knowingly demanded in the statement more than is justly due.

■ The liens of Taping, Inc., Kullberg Manufacturing Co. and Thompson Plumbing Co. included amounts in excess of their contract with Windsor Devt. However, as the trial court noted, the supreme court has held that before a lien is invalidated under this section, it must be proven that the lien claimant acted fraudulently, in bad faith, or made an intentional demand for an amount in excess of that due. *See Delyea v. Turner*, 264 Minn. 169, 175, 118 N.W.2d 436, 440 (1962); *Bierlein v. Gagnon*, 255 Minn. 143, 148, 96 N.W.2d 573, 578 (1959); *Aaby v. Better Builders, Inc.*, 228 Minn. 222, 37 N.W.2d 234 (1949).

There is evidence to support the trial court's conclusion that the extra amounts claimed by Taping, Kullberg, and Thompson were all attributable to work performed by those companies for Windsor at other times and which was due and owing. The trial court's conclusion that the added amounts were not fraudulent is not erroneous.

2c. Fraudulent inducement of the lien waivers:

■ Lien waivers were executed by Taping, Inc., Kullberg, Inc. and George Sedgwick Heating and Air Conditioning Co., and delivered to Windsor in the spring of 1982.

The trial court found that those lien waivers were fraudulently induced and therefore not valid.

The lien claimants testified that Windsor executives encouraged them to take second mortgages in lieu of their lien rights. All testified that the executives represented that they would have a second mortgage. This testimony supports the trial court's conclusion, and there was no error.

3. *Joinder of H. & Val J. Rothschild:*

■ A few days before trial, on February 12, 1985, the trial court granted R.B. Thompson, Jr. Lumber Company's motion to amend its complaint to include as a defendant the parent corporation to Rothschild Financial Corp., namely H. and Val J. Rothschild, Inc.

Appellant Rothschild argues that this order was erroneous. In the memo accompanying its order, the trial court described at length its rationale for granting the motion.

There is a conflict here between Minn.R. Civ.P. 15.03, which allows relation back of an amended complaint, and Minn.Stat. § 514.12, subd. 3 (1984), which requires that a person be made a party within a year of the commencement of the action.

Citing *Guillaume & Associates, Inc. v. Don-John Co.*, 336 N.W.2d 262 (Minn.1983), the court said that "substantive rights should not be decided on technical grounds, particularly if no harm results." The court's reasoning is sound. Both of the requirements of Rule 15.03 were met: Rothschild received notice of the action, and knew that but for a mistake concerning the identity of the proper party, the action would have been brought against it. There was no error.

### 4. *Denial of Sedgwick's request to amend its answer and crossclaim:*

■ Sedgwick Heating failed to appear at the hearing on February 11, 1985, when the motions concerning the amendment of the complaint on Lot 37 were heard. The trial court refused to allow amendment of Sedgwick Heating's answer and crossclaim because the company failed to appear at the hearing. On the other hand, the court granted the plaintiff's motion to amend its complaint to join H. & Val J. Rothschild as a defendant.

It is within the court's discretion to decide when a party may amend his pleading. Generally, a party may amend his pleading once as a matter of course before a responsive pleading is served. Otherwise:

> * * * a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Minn.R.Civ.P. 15.01.

This decision was within the trial court's discretion, and there was no error.

### 5. *Attorney fees:*

■ Sedgwick Heating and Air Conditioning complains that the trial court erred in refusing to award attorney fees pursuant to Minn.Stat. § 514.10 (1984). The trial court held that Sedgwick was not entitled to attorney fees because it obtained no outside legal counsel.

Under both Minn.Stat. §§ 514.10 and 549.21 (1984), attorney fees may be awarded within the discretion of the court. The trial court was within its discretion in refusing Sedgwick Heating attorney fees.

### DECISION

We affirm the decision of the trial court.