**STATE of Minnesota, Appellant,**

v.

**Charles Edward HICKS, Respondent.**

No. C1–98–298.

Court of Appeals of Minnesota.

Aug. 25, 1998.

Review Denied Oct. 20, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul; and Jay M. Heffern, Minneapolis City Attorney, Judd Edward Gushwa, Assistant City Attorney, Minneapolis, for appellant.

William E. McGee, Chief Fourth District Public Defender, Stephen M. Simon, Assistant Public Defender, Robert L. Smith, Certified Student Attorney, Minneapolis, for respondent.

Considered and decided by TOUSSAINT, C.J., SHORT and FORSBERG, JJ.

## OPINION

THOMAS G. FORSBERG, Judge.[*]

This appeal is from a pretrial order dismissing appellant State of Minnesota's case against respondent Charles Edward Hicks. Hicks was arrested and charged with carrying a weapon without a permit in a public place, in violation of Minn.Stat. § 624.714, subd. 1(a) (1996). On appeal, the state argues the trial court erred in interpreting the statutory terms "public place or public area."

### FACTS

On August 15, 1997, at approximately 6:30 p.m., Hicks stood in the hallway of an apartment building and attempted to pry open the door to the apartment he shared with his girlfriend. Hicks did not have his keys and was trying to get his two children into the apartment. Police officers arrived in response to a 911 call regarding an alleged or attempted break-in at the apartment complex. The police conducted a lawful pat-down search of Hicks and found a loaded .36 caliber Derringer pistol in his right, front pocket. Hicks did not have a permit to carry a handgun within the City of Minneapolis.

The building in question is a secured building with nine apartments. Admittance into the building and its hallways can be gained only through the use of a key or by being "buzzed in" by a resident of the apartment building. Once inside the building, entrance to an individual apartment requires a key to that specific apartment. When the police arrived at the building, despite not having keys, Hicks was inside of the secured building, standing in the hallway in front of his apartment.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

## ISSUE

Does the hallway of a secured apartment building constitute a "public place" under Minn.Stat. § 624.714, subd. 1(a) (1996)?

## ANALYSIS

Minn.Stat. § 624.714, subd. 1(a) (1996), makes it unlawful for a person to possess a pistol in a "public place or public area" without first having obtained a permit to carry that pistol. However, the statute exempts persons who carry a pistol about their business, dwelling house, or premises, or on land that they possess. Minn.Stat. § 624.714, subd. 9(a) (1996).

■ We are asked to determine whether the secured hallway of an apartment building constitutes a "public place" within the given statutory language. This case presents a legal question, which we review de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984) (stating appellate court need not defer to trial court's analysis of purely legal issues); *Arvig Tel. Co. v. Northwestern Bell Tel. Co.,* 270 N.W.2d 111, 114 (Minn.1978) (noting statutory interpretation presents legal issue).

■ We interpret statutes to "ascertain and effectuate" legislative intent and, in the absence of ambiguity, will not disregard the letter of the law in pursuit of its purpose. Minn.Stat. § 645.16 (1996). However, where the statute fails to specifically define its terms, we turn to an examination of the common and approved usage of those terms. *See* Minn.Stat. § 645.08(1) (1996) (stating words and phrases to be construed according to common and approved usage).

Here, the statute fails to provide a specific definition for "public place." The term "public place" is defined as:

A place to which the general public has a right to resort, not necessarily a place devoted to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public (*e.g.* a park or public beach). Also, a place in which the public has an interest as affecting the safety, health, morals and welfare of the community. A place exposed to the public, and where the public gathers together or pass to and fro. *Black's Law Dictionary* 1230–31 (6th ed.1990). Other statutes define "public place" to include the common areas of rental apartment buildings. *See, e.g.,* Minn.Stat. § 144.413, subd. 2 (1996) (defining, for purposes of Minnesota Clean Indoor Air Act, "public place" to include common area of rental apartment building).

■ Hicks argues the secured hallway is not a "public place" because it does not fall within the common meaning of that term. *See State v. DeLegge,* 390 N.W.2d 10, 12 (Minn.App.1986) (examining underlying circumstances to determine if, in light of statute's purpose, private driveway constitutes "public place"). We disagree. Apartment building hallways are areas appropriated by the landlord for the apartment residents' common use. *Cf.* Minn.Stat. § 515.02, subd. 7(2) (1996) (defining "common area" for purposes of condominium law to include halls, corridors, lobbies, entrances, and exits). To insure those areas remain "common to all," residents may not sua sponte decorate or otherwise disturb them. *See Black, supra* at 1227 (defining "public" as "common to all or many; general; open to common use"). Furthermore, the mere ability of the residents to "buzz in" their guests does not entirely eliminate the presence of unwanted or uninvited individuals, or destroy the pervasively "common" nature of the hallways. Thus, despite the "secured" status of an apartment building, the hallway continues to provide a thoroughfare for the use of residents and non-residents alike. *Cf. United States v. Nohara,* 3 F.3d 1239, 1242 (9th Cir.1993) (concluding apartment building hallways available for use of residents, their guests, landlord and his agents, and others) (quoting *United States v. Eisler,* 567 F.2d 814, 816 (8th Cir.1977)).

It is undisputed: (1) despite having no keys and no one at home to "buzz" him in, Hicks gained entry to the apartment hallway and attempted to pry open his apartment door with a screw driver; (2) the officers, responding to a 911 call regarding an alleged or attempted break-in, found Hicks in the

hallway with his two small children; (3) while conducting a lawful pat-down search, the officers found a loaded 36-caliber Derringer pistol in Hicks's right, front pocket; and (4) Hicks did not have a permit to carry the gun in Minneapolis. Given these facts and the important governmental need to protect innocent people from injury resulting from the discharge of firearms, we conclude the hallway constitutes a "public place" under Minn. Stat. § 624.714, subd. 1. *See State v. Paige*, 256 N.W.2d 298, 303 (Minn.1977) (stating purpose of Minn.Stat. § 624.714 is to "prevent the possession of firearms in places where they are most likely to cause harm in the wrong hands, i.e., in public places where their discharge may injure or kill intended or unintended victims"); *see, e.g., DeLegge*, 390 N.W.2d at 12 (concluding "public place" should be construed to include private property where discharged gun could easily result in injury to innocent people who have right to walk by).

Because the police report in the state's appendix was not part of the record before the trial court, we grant Hicks' motion to strike. *See* Minn. R. Civ.App. P. 110.01 (providing record on appeal consists only of papers filed in trial court, exhibits, and transcript); *Thomas v. Fey*, 376 N.W.2d 266, 269 (Minn.App.1985) (recognizing appellate court generally cannot consider evidence outside record). Thus, that report was not considered in our resolution of this case.

### DECISION

The hallway of a secured apartment building is a "public place" under Minn.Stat. § 624.714, subd. 1(a).

**Reversed.**

TOUSSAINT, Chief Judge (dissenting).

I respectfully dissent. The majority concludes that a nine-unit apartment complex's hallway within a secured access is a "public place" within the meaning of Minn.Stat. § 624.714, subd. 1(1996). I disagree.

This case can be distinguished from *State v. DeLegge*, 390 N.W.2d 10 (Minn.App., 1986). *Id.* In *DeLegge*, appellant was outside of his home inside a car that was parked in his driveway in possession of the pistol. 390 N.W.2d at 11. The driveway abutted a public roadway. *Id.* at 11–12. Moreover, appellant's homestead and driveway were located in a residential neighborhood, where the general public "had a right to resort" to the abutting sidewalk, parking area, and roadway. *Id.* (quoting Black's Law Dictionary definition of "public place"). Furthermore, appellant's driveway area was "usually accessible to the neighboring public," and the public was free "to pass to and fro" past the driveway. *Id.* A stray bullet fired from the driveway could encroach upon numerous areas of public resort.

When the language of a statute is ambiguous, it is the duty of this court to "ascertain and effectuate the intention of the legislature." *Stawikowski v. Collin's Elec. Constr. Co.*, 289 N.W.2d 390, 395 (Minn.1979). However, where the language of the statute is unambiguous, but merely produces a troubling result, the court must follow the language of the statute. *See R.B. Thompson, Jr. Lumber Co. v. Windsor Dev. Corp.*, 383 N.W.2d 362, 366–67 (Minn.App.1986), *review denied* (Minn. May 21, 1986).

Minn.Stat. § 624.714, subd. 1(a) (1996), provides in part:

> [a] person, * * * who carries, holds or possesses a pistol in a motor vehicle, snowmobile or boat, or on or about the person's clothes or the person, or otherwise in possession or control in a public place of public area without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor.

When a statute does not define a word or phrase, the word or phrase "construed according to rules of grammar and according to their common and approved usage." Minn. State § 645.08(1) (1996). Black's Law Dictionary defines "public place" as:

> [a] place to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public (e.g. a park or public beach). Also, a place in which the public has an interest as affecting the safety,

health, morals and welfare of the community. A place exposed to the public, and where the public gathers together or pass to and fro.

*Black's Law Dictionary* 1230–31 (6th ed.1990).

The record reveals that Hicks' nine-unit, secured apartment building was only accessible "by residents with a key or guests allowed access by a resident activating a buzzer." Unlike *DeLegge,* here there is no evidence to support a determination that (1) the public had a "right to resort" to the apartment complex; (2) the apartment building was accessible to the public; (3) the complex was a place where the public had an interest in protecting the community; or (4) the complex was exposed to the public whereby the public could pass "to and fro."

Construing the meaning of "public place" as we must, according to its common and plain usage, the hallway of Hick's apartment complex was not a public place within the meaning of Minn.Stat. § 624.714, subd. 1. Because there is no ambiguity in the statute, this court is without authority to look beyond its plain meaning. Thus, I would affirm the trial court.